**STOCKTON EAST WATER DISTRICT, Central San Joaquin Water District, County of San Joaquin, City of Stockton, and California Water Service Company, Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

**No. 04–541L.**

United States Court of Federal Claims.

Oct. 4, 2004.

380

Nancie G. Marzulla, Washington, DC, for plaintiffs. Roger J. Marzulla, Marzulla & Marzulla, Washington, DC, Jeanne M. Zolezzi and Jennifer L. Spaletta, Herum Crabtree Brown, Douglas H. Calkins, Office of City Attorney, and Deeann Gillick, Neumiller & Beardslee, Stockton, CA, of counsel.

Adam J. Siegel, Washington, DC, with whom was Assistant Attorney General Thomas L. Sansonetti, for defendant. Alf W. Brandt, Assistant Regional Solicitor, Pacific Southwest Region, United States Department of the Interior, Sacramento, CA, of counsel.

## OPINION

CHRISTINE O.C. MILLER, Judge.

Before the court after argument is defendant's motion to dismiss pursuant to RCFC 12(b)(1) and (6) for, respectively, lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted. The pivotal issue to be decided is whether the statute of limitations, 28 U.S.C. § 2501 (2000), bars a takings claim, when the claim was timely filed in federal district court and thereafter transferred under 28 U.S.C. § 1631 (2000), but the court had ordered plaintiffs to effect transfer over ten years earlier. Defendant also objects to plaintiffs' pleading a breach of contract, in addition to the takings claim, in the complaint filed in the Court of Federal Claims. Finally, defendant raises the law of the case doctrine to foreclose plaintiffs from relitigating any issues necessary to maintain their action in the Court of Federal Claims.

Litigation over this dispute began in 1993 with a complaint filed in the United States District Court for the Eastern District of California. Over ten years later, after 368 docket entries, that court ordered a partial transfer of the action to the Court of Federal Claims. In the interim the district court dealt with extensive motions, a number of intervening parties, consolidation of related cases, and stays—all of which involved complex legal issues of constitutional dimensions, touching on principles of federalism, and interpretation of statutes in existence for over a century. The district court's daunting procedural and substantive embrace of this multi-party litigation, as the record of those proceedings filed by the parties evidences, affords this court the rare opportunity to acknowledge the diligence of a fellow trial judge.

The 2004 transfer of this action created a forum authorized to hear a takings claim once subject to a 1994 memorandum opinion of dismissal and order to transfer it, but nevertheless still subject to the district court's jurisdiction. Although the transfer order no doubt rejuvenated plaintiffs' claim, the ten-year lapse in time between the 1994 dismissal order and the 2004 transfer order gives rise to the Government's arguments before this court.

The presentation of the factual and procedural background of this case derives from the parties' efforts to provide the relevant orders and opinions from the federal district court action prior to transfer. Because defendant raises the law of the case doctrine by its motion to dismiss, this court presents a separate analysis of the pertinent portions of the district court's rulings.[1]

---

1. Defendant's motion requires consideration of certain pleadings, motions, and judicial opinions issued in the action prior to the partial transfer of plaintiffs' takings claim to this court. Such documents, attached to both parties' briefs as exhibits, are public records and therefore do not convert defendant's motion under 12(b)(6) to one for summary judgment. *See Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir.1994) (confirming district court's ability to consider public court documents in earlier action on motion to dismiss), cited with approval in *Sebastian v. United States*, 185 F.3d 1368, 1374 (Fed.Cir.1999).

## FACTS

Plaintiffs are Stockton East Water District ("SEWD"), Central San Joaquin Water Conservation District ("Central"), San Joaquin County, City of Stockton, and California Water Service Company ("CWSC"), each of which is involved with the provision of municipal, industrial, and agricultural water, as well as the operation and maintenance of water facilities, within California's San Joaquin Valley—just south of Sacramento County. This case involves a dispute over two 1983 agreements involving SEWD, Central, and the United States Bureau of Reclamation ("Reclamation") for the appropriation of water after completion of California's second largest earthfill dam, the New Melones Dam.

According to the Court of Federal Claims complaint entitled "Amended Complaint for Just Compensation and Breach of Contract," filed April 20, 2004 (the "2004 Amended Complaint")[2], the New Melones Dam was part of the Central Valley Project ("CVP"), a federal reclamation project authorized by the Flood Control Acts of 1944 and 1962, Flood Control Act of Dec. 22, 1944, Pub.L. No. 78–534, § 10, 58 Stat. 887, 900–02; Flood Control Act of Oct. 23, 1962, Pub.L. No. 87–874, § 203, 76 Stat. 1173, 1191–92. *See* 2004 Amended Complaint ¶ 11. Damn construction began in 1966 and was completed in 1978, while filling of the New Melones Reservoir (the "Reservoir"), which has a capacity of 2.4 million acre-feet and 100 miles of shoreline, began in 1983.

With the Flood Control Acts, Congress directed that Reclamation construct and operate the dam "pursuant to the Federal reclamation laws." Flood Control Act of Oct. 23, 1962 § 203, 76 Stat. at 1191. The Reclamation Act of 1902, Pub.L. No. 57–161, 32 Stat. 388, also discussed in plaintiffs' complaint, required Reclamation to apply for appropriate state permits, and the California Resources Control Board (the "SWRCB") imposed certain restrictions of the use of the water—a decision subject to extensive litigation including review by the United States Supreme Court. *See California v. United States*, 438 U.S. 645, 98 S.Ct. 2985, 57 L.Ed.2d 1018 (1978).

To comply with the SWRCB's requirements, as interpreted by the federal courts, Reclamation was required to demonstrate that it had "firm commitments" before impounding water for consumptive use. 2004 Amended Complaint ¶ 13. To accomplish that milestone, Reclamation commenced contract negotiations with SEWD and Central. These negotiations allowed Reclamation to receive approval from the SWRCB. *Id.* ¶¶ 13–15.

In 1983 the parties finalized their contract negotiations, and Reclamation entered into separate contracts with SEWD and Central for the provision of a certain quantity of water on an annual basis "for irrigation and domestic purposes." 2004 Amended Complaint ¶¶ 14, 16–17. The contracts required the water districts to "construct and install" at their own expense water delivery systems to carry the water from the Reservoir to the water district facilities. *Id.* ¶ 18.

SEWD, relying on these contracts, contracted with CWSC, the City of Stockton, and other water districts, not parties to this litigation, to provide them with water received from the New Melones Reservoir. In exchange SEWD received assistance with the financing of the water delivery systems. The City of Stockton, CWSC, and the other water districts that are not part of this lawsuit also have undertaken construction of water delivery facilities in reliance on the Melones Contract. Plaintiffs allege that the cost of the entire delivery system exceeded $65 million.[3] 2004 Amended Complaint ¶¶ 19–22.

According to plaintiffs, Reclamation has failed to provide water in accordance with the contracts. This defalcation is the basis for plaintiffs' claims, now before this court, for a taking without just compensation as required by the Fifth Amendment and for breach of contract. Because the 2004 Amended Complaint pleads the breach of contract based on the allegations supporting their takings claim, the allegations of the

---

**2.** Plaintiffs filed an "amended complaint" at their option pursuant to RCFC 3.1.

**3.** Central apparently did not participate in the funding of the water delivery system, but instead pays for a right of use.

complaint filed by plaintiffs in 1993 in the district court become critical. *See* Complaint, *Stockton E. Water Dist. v. United States*, No. CIV–S–93–1577 DFL GGH (E.D. Cal., filed Oct. 1, 1993) (the "1993 Complaint").

According to the 1993 Complaint, the Central Valley Project Improvement Act, Pub.L. No. 102–575, title XXXIV, 106 Stat. 4600, 4706–31 (1992) (the "CVPIA"), precipitated Reclamation's alleged wrongful conduct. *See* 1993 Complaint ¶¶ 28–39. Among other things, the CVPIA imported the requirements of the Endangered Species Act, 16 U.S.C. §§ 1531–1544. CVPIA § 3406(b), 106 Stat. at 4714. The CVPIA also required the Secretary of the Interior (the "Secretary"), who was responsible for operation of the CVP, "to dedicate and manage annually eight hundred thousand acre-feet of Central Valley Project yield for the primary purpose of implementing the fish, wildlife, and habitat restoration purposes and measures authorized by this [Act.]" CVPIA § 3406(b)(2), 106 Stat. at 4715. In addition, the CVPIA required the Secretary to "obtain a modification in [preexisting permits and licenses] in a manner consistent with ... State law" before reallocating water to accomplish the goals of the CVPIA. CVPIA § 3411(a), 106 Stat. at 4731.

The 1993 Complaint charged that the Secretary, in conjunction with the Department of Fish and Wildlife Service ("F & W") and its state counterpart, reallocated—"without any consultation with [plaintiffs] or other holders of contracts or water rights on the Stanislaus River"—200,000 acre-feet from the New Melones Unit for the 800,000 acre-feet provided under the CVPIA. Much of this water was to be held in storage "even though it is acknowledged that some or all ... may be spilled and lost if the winter of 1993 is a wet one." 1993 Complaint ¶ 32. Plaintiffs alleged, however, that Reclamation and the F & W "ignored and failed and refused to consider allocating water in a fair, equitable manner consistent with law from

each and every other CVP project[.]" *Id.* ¶ 34.

These determinations appeared in the F & W's release of the "prescription for implementation of the management of the 800,000 acre feet of CVP yield for 1993" (the "1993 Prescription"). 1993 Complaint ¶ 35. Accordingly, in June 1993 Reclamation "orally advised SEWD and [Central] that it would not deliver any water to either [of them] under [their contracts] during the 1993 year." *Id.* ¶ 37. Plaintiffs maintain that the named defendants thereafter continuously failed to meet their contractual obligations.

## PROCEDURAL BACKGROUND

### 1. *The 1993 Complaint*

Plaintiffs first filed a complaint on October 1, 1993, in the United States District Court for the Eastern District of California that enumerated five untitled claims for relief. As characterized by the district court, these claims were (1) impairment of "vested rights under ... water contracts[ ] in violation of the Fifth Amendment due process clause;" (2) violation of the National Environmental Policy Act for failure to prepare an environmental impact statement; (3) violation of the CVPIA, section 3410; (4) arbitrary and capricious action by the Government; and (5) violation of the Fifth Amendment's takings clause. *See Westlands Water Dist. v. United States*, 850 F.Supp. 1388 (E.D.Cal.1994) ("Memorandum Opinion and Order Re: Defendants and Defendants–in–Intervention Motions to Dismiss") (consolidated cases) (the "1994 Dismissal Order"). Plaintiffs named as defendants the United States of America, Department of the Interior, Bureau of Reclamation; United States of America, Department of the Interior, Fish and Wildlife Service; and Bruce Babbitt, Secretary of the Interior (the "federal defendants").

### 2. *The 1994 Dismissal Order*

The federal defendants moved to dismiss the complaint, and the motion was consolidated with similar motions in several related cases before Judge Oliver W. Wanger.[4]

---

4. The lead case was *Westlands Water Dist. v. United States*, No. CV–F–93–5327 OWW SSH (E.D. Cal., filed May 17, 1993).

Judge Wanger heard the motions and issued a ruling in a memorandum opinion and order dated February 10, 1994. *See* 1994 Dismissal Order. Although the federal defendants moved to dismiss plaintiffs' claims on various grounds, which the court addressed in turn, only the analyses and orders with respect to plaintiffs' due process and takings claims are pertinent.

In relevant part, federal defendants moved to dismiss plaintiffs' due process claim on the ground that the "contracts at issue confer no vested property interest that warrants constitutional protection." 1994 Dismissal Order at 1399. Presumably because the federal defendants argued solely that the contract did not provide vested, cognizable rights—the opinion does not discuss any other potential sources of such rights—the court's due process analysis began with a well-developed explanation of the applicable law in the context of due process challenges concerning rights against the United States arising from contract. 1994 Dismissal Order at 1403–05. The court cited Supreme Court and Ninth Circuit precedent for the following:

> Where the rights conferred in an agreement are entered "in conformity with" legislation, conferring rights coextensive with that legislation, the agreement remains subject to the legislature's express or implied power to amend that agreement, and no protectible property interest exists apart from that conferred by statute.

*Id.* at 1405 (citing *Bowen v. Pub. Agencies Opposed to Social Sec. Entrapment*, 477 U.S. 41, 53–55, 106 S.Ct. 2390, 91 L.Ed.2d 35 (1986); *Peterson v. U.S. Dep't of the Interior*, 899 F.2d 799, 808 (9th Cir.1990)). Thus, the court considered the analysis of whether the contract conferred a cognizable property right inseparable from the question of whether the Government, by contract, abrogated its sovereign right to enact subsequent legislation. To resolve the issue, the court applied the "unmistakability doctrine," a rule of government contract interpretation: The "sovereign power [to enact subsequent legislation] will remain intact unless surrendered in unmistakable terms." *Id.* at 1403 (internal quotations and alterations omitted); *see also*

*United States v. Winstar Corp.*, 518 U.S. 839, 871–88, 116 S.Ct. 2432, 135 L.Ed.2d 964 (1996).

After carefully parsing the provisions of the contract pertinent to the issue of waiver of sovereign power, *see* 1994 Dismissal Order at 1405–07, the court ultimately held that ambiguities in the contracts precluded a decision on the issue without further evidence of the parties' intent, *id.* at 1407. On that ground the court denied the federal defendants' motion to dismiss the due process challenge. *Id.*

The federal defendants had moved to dismiss the takings claim for lack of subject matter jurisdiction. The court agreed, referencing the Tucker Act, 28 U.S.C. § 1491(a)(1), and stated that "plaintiffs' takings claims belong in the Court of Claims." 1994 Dismissal Order at 1411. The order recited: "The motion to dismiss [the plaintiffs'] fifth claim[ ] for a governmental taking without just compensation in violation of the Fifth Amendment [is] GRANTED, with ten days leave to amend, and without prejudice to bringing that claim in the Court of Claims." *Id.* at 1427.

### 3. *The 1995 Amended Complaint*

After the court's 1994 Dismissal Order, plaintiffs did not file their claim for a governmental taking without just compensation in the Court of Federal Claims. Instead, they filed an amended complaint before the district court. *See* First Amended Complaint for Injunctive Relief and for Damages and Demand for Jury Trial, *Stockton E. Water Dist. v. United States*, No. CIV–S–93–5896–OWW (E.D. Cal., filed Sept. 22, 1995) (the "1995 Amended Complaint").[5] The 1995 Amended Complaint, like the original 1993 Complaint, explicitly alleged that the contracts provided plaintiffs with vested property rights. *Id.* ¶¶ 14–15. Plaintiffs, however, added several new allegations addressing events subsequent to the issuance of the 1993 Prescription, identified above, including further notifications that water would not be provided to plaintiffs pursuant to the contracts. *Id.* ¶¶ 37–60.

---

**5.** Plaintiffs concurrently filed a complaint before the SWRCB.

Plaintiffs alleged that each year after the filing of the 1993 Complaint, the F & W failed to properly allocate water rights allegedly conferred to plaintiffs and failed, procedurally, to properly consult with plaintiffs concerning subsequent allocations when issuing the annual prescriptions. 1995 Amended Complaint ¶¶ 37–60. Further, Reclamation allegedly continued to refuse to provide SEWD and Central with the entire amount of water—in some cases providing no water—as the contracts required. *Id.* ¶¶ 44, 52, 57. Plaintiffs also alleged that federal defendants contracted with the State of California, pursuant to a contract entitled "Principles for Agreement on Bay–Delta Standards Between the State of California and the Federal Government" ("Principles Agreement"), to provide water flows to a specific region and treated this contract as superceding the agreements with plaintiffs. *Id.* ¶¶ 49–51.

The 1995 Amended Complaint sought relief on ten named claims, none of which included a takings claim, based on violations of due process; the Administrative Procedure Act, 5 U.S.C. §§ 500–596; the Reclamation Act; and state water law. 1995 Amended Complaint ¶¶ 61–133; *see also Stockton E. Water Dist. v. United States,* No. CV–F–93–5896 OWW at 4–6 (E.D.Cal. Nov. 8,1996) ("Memorandum Opinion and Order re: Federal Defendants' Motion Requiring Plaintiffs To Exhaust Administrative Remedies; Plaintiffs' and Federal Defendants' Cross–Motions for Partial Summary Judgment and Notice of Intent To Consolidate Cases") (the "1996 Summary Judgment Ruling").

### 4. *1996 Summary Judgment Ruling*

According to defendant's presentation of the record, the next pertinent event was the 1996 Summary Judgment Ruling, whereby Judge Wanger denied the federal defendants' motion to require plaintiffs to exhaust administrative remedies and their request for abstention due to the pending SWRCB proceeding. The court, however, did issue a stay "pending the outcome of SWRCB proceedings to determine state water rights issues (Claims 7, 9, and 10)[.]" 1996 Summary Judgment Ruling at 58.

The most relevant portion of Judge Wanger's opinion concerns an aspect of the cross-motions for partial summary adjudication. *See* 1996 Summary Judgment Ruling at 34–50. Plaintiffs had moved for a ruling that the CVPIA authorized the Secretary to reallocate water for fishery and habitat restoration purposes only after meeting plaintiffs' preexisting contractual entitlements. *Id.* at 34. Thus, according to plaintiffs, the allocation of 800,000 acre-feet of water prior to meeting the contractual obligations was contrary to law.

The statutory language of the CVPIA under review authorized the Secretary to allocate

> annually eight hundred thousand acre-feet of Central Valley Project yield for the primary purpose of implementing the fish, wildlife, and habitat restoration purposes .... [T]he term "Central Valley Project yield" means the delivery capability of the Central Valley Project during the 1928–1934 drought period after fishery, water quality, and other flow and operational requirements imposed by terms and conditions existing in licenses, permits, and other agreements pertaining to the Central Valley Project under applicable State or Federal law existing at the time of enactment of this title have been met.

CVPIA § 3406(b)(2), 106 Stat. at 4715–16 (emphasis added). Plaintiffs contended that their rights to a supply of water predated enactment of the CVPIA. 1996 Summary Judgment Ruling at 35. Thus, they attacked the Secretary's inclusion of plaintiffs' water supply within the "Central Valley Project yield" and the allocation of 800,000 acre-feet of water prior to meeting plaintiffs' water rights.

Constraining plaintiffs was the district court's earlier ruling in *Westlands Water Dist. v. Patterson,* 900 F.Supp. 1304 (E.D.Cal.1995), which construed the language of section 3406(b)(2) as it pertained to parties in a related case with prior existing contractual rights to CVP water. *See* 1996 Summary Judgment Ruling at 36–37. Under *Westlands Water District,* plaintiffs had to demonstrate "superior water rights which distinguish them from those who have water

service contracts for surplus water." *See id.* at 36. Plaintiffs attempted to meet *Westlands Water District's* requirements by arguing that their superior water rights derived from California Water Code section 11460 ("Watershed Protection Act"), which provides:

> In the construction and operation by the department of any project under the provisions of this part a watershed or area wherein water originates, or an area immediately adjacent thereto which can conveniently be supplied with water therefrom, shall not be deprived by the department directly or indirectly of the prior right to all of the water reasonably required to adequately supply the beneficial needs of the watershed, area, or any of the inhabitants or property owners therein.

*Id.* at 36–37 (quoting CAL. WATER CODE § 11460).

Following its thorough analysis of this argument, the court held that plaintiffs "do not, by virtue of their contracts with [Reclamation], hold prior appropriative or senior water rights" that would require the Secretary to appropriate their water before appropriating the 800,000 acre-feet of water for fishery and wildlife purposes. 1996 Summary Judgment Ruling at 43. However, the court would not rule on whether the Watershed Protection Act afforded plaintiffs prior water rights necessary to support their argument without "factual analysis." *Id.* at 43 & n. 5. Thus, the court denied plaintiffs' motion for partial summary adjudication that "the Secretary must supply water under the contracts prior to releasing water under § 3406(b)(2)[.]" *Id.* at 48. The court denied the federal defendants' cross-motion "that Plaintiffs have no contractual entitlement to CVP water, except that is subordinate to the CVPIA" because the court concluded, as it did in the 1994 Dismissal Order, that the contracts were ambiguous as to abrogation of the sovereign power to legislate. *Id.* at 46, 48.

The court then addressed "[w]hether [r]epudiation of the Central and [SEWD] [c]ontracts under the CVPIA violates the Fifth Amendment." 1996 Summary Judgment Ruling at 48. Without considering necessary the elaborate discussion set forth in the 1994 Dismissal Order, the court again focused on whether plaintiffs alleged a violation of a cognizable property right: "Plaintiffs do not have cognizable unalterable property rights stemming from federal law. The full extent of their contract rights requires evidentiary development." *Id.* at 49. Yet, the court proceeded to analyze whether plaintiffs held vested property rights derived from the California Watershed Protection Act. The court relied on a state attorney general's interpretation that stated: " '[N]o inhabitant of a watershed of origin becomes possessed of any presently vested title or right to any specific quantity of water as a result of [the Watershed Protection Act].' " *Id.* at 49–50 (quoting 25 Ops. Cal. Atty. Gen. En. 8, 20 (1955)). Because plaintiffs did not allege that they had "applied for the right to appropriate water or a permit to appropriate water," the court appears to have held that plaintiffs waived the argument:

> Plaintiffs have been given ample opportunity to provide evidence that they have vested rights under the Watershed Protection Act. They have not done so. There appears to be no reason to stay this decision for proceedings before the SWRCB.... As to the claim that Plaintiffs have unalterable state water rights arising from the Watershed Protection Act of California, Federal Defendants' motion for partial summary judgment is GRANTED.

*Id.* at 50.

### 5. *The 1996 Supplemental Order*

Although defendant failed to include in its moving papers a relevant subsequent ruling, plaintiffs point out that by order dated November 27, 1996, the district court supplemented its prior 1996 Summary Judgment Ruling by withdrawing a key portion of the prior opinion. *Stockton E. Water Dist. v. United States,* No. CV–F–93–5896 OWW (E.D.Cal. Dec. 4, 1996) ("Order Re: Federal Defendants' Motion Requiring Plaintiffs to Exhaust Administrative Remedies; Plaintiffs' and Federal Defendants' Cross–Motions for Partial Summary Judgment; and Notice of Intent To Consolidate Cases") (the "1996 Supplemental Order"). Significantly, the

court "withdr[ew] its ruling and discussion of Federal Defendants' motion for partial summary judgment with regard to Plaintiffs' water right claim under California Water Code § 11460[.]" *Id.* at 3. The court also requested supplemental briefing on the state law issue.[6]

### 6. *The 1997 Opinion*

The court took up the state law issue after supplemental briefing in 1997. *See Stockton E. Water Dist. v. United States,* Nos. CV–F–93–5896 OWW; CV–F–96–5738 OWW DLB (E.D.Cal. May 8, 1997) ("Memorandum Opinion and Order Re: State Defendants' Motion To Dismiss and/or Strike Federal Defendants' Motion for Summary Judgment; Analysis of California Water Code § 11460; Referral of Claims to SWRCB") (the "1997 Opinion"). The relevant portion of this opinion is the ruling regarding the issue of whether plaintiffs can rely on the California Watershed Protection Act for their source of a cognizable property right. *Id.* at 26–36.

The court noted that "[i]t would be logical for a contract that perfects existing water rights to mention the source of these water rights in the contract. [Plaintiffs'] contracts do not do so." 1997 Opinion at 32. "Having a contractual entitlement to interim water is not necessarily inconsistent with having water rights under § 11460." *Id.* at 33. Despite its analysis the court ultimately agreed with amicus curiae, SWRCB, that "all issues surrounding [plaintiffs] claims under § 11460 [should be referred] to the SWRCB." *Id.* at 35.

### 7. *2004 Motion and Stipulation to Confirm Transfer; 2004 Transfer Order*

Precipitated by some unexplained circumstance, plaintiffs filed on January 12, 2004, a "Motion and Stipulation to Confirm Transfer

of 5th Cause of Action From Complaint of October 1, 1993" in *Stockton E. Water Dist. v. United States,* Nos. CV–F–93–5896 OWW; CV–F–96–5738 OWW DLB (E.D.Cal. Jan. 12, 2004) (consolidated cases) (the "2004 Transfer Motion and Stipulation"). Attached to plaintiffs' motion was a stipulation signed by the federal defendants. Exactly what the parties believed they were asking the court to transfer, and what the court ultimately transferred, is to be addressed. As to this point, relevant in the 2004 Transfer Motion and Stipulation is language describing the fifth cause of action of the 1993 Complaint as both "a violation of vested property rights under the Fifth Amendment and breach of contract[.]" *Id.* at 2.[7]

On January 29, 2004, the district court granted plaintiffs' motion and issued an "Order Confirming Transfer of 5th Cause of Action from Complaint of October 1, 1993" in *Stockton E. Water Dist. v. United States,* Nos. CV–F–93–5896 OWW, CV–F–96–5738 OWW DLB (E.D.Cal. Jan. 30, 2004) (consolidated cases) (the "2004 Transfer Order"), transferring the fifth cause of action to the Court of Federal Claims. The order does not recite the nature of the fifth cause of action, *i.e.,* whether it states a claim for a takings and/or breach of contract. This court rules that Judge Wanger transferred the takings claim pleaded in the 1993 Complaint and subject to the 1994 Dismissal Order.

### 8. *Proceedings in the Court of Federal Claims*

This court received the transferred action on April 1, 2004, and plaintiffs filed their 2004 Amended Complaint on April 20, 2004, seeking relief for a takings and a breach of contract.

---

6. When read in conjunction with the 1996 Summary Judgment Ruling, the opinion regarding plaintiffs' Fifth Amendment due process claim appears to hold that plaintiffs' claim to a cognizable property right fails only with respect to its derivation from federal law, *i.e.,* the CVP and the CVPIA do not provide a source for a property right protected by the due process clause. What remained undecided was whether the property right could arise from the contracts or from state water law.

7. The district court had similarly characterized the fifth case of action in its 1996 Summary Judgment Order. *See* 1996 Summary Judgment Order at 3. To avoid elevating the significance of this mistake, this court acknowledges that neither the 1993 Complaint nor the 1994 Dismissal Order mentioned a claim for breach of contract. This issue is discussed more fully in part II.2.

## DISCUSSION

Defendant argues that this court lacks subject matter jurisdiction over plaintiffs' claims for a taking and a breach of contract because they are time-barred by 28 U.S.C. § 2501 (2000). Defendant also argues that plaintiffs' claim for a takings must be dismissed under RCFC 12(b)(6) for failure to state a claim upon which relief can be granted under the law of the case doctrine. Finally, defendant objects to addition of a breach of contract in the 2004 Amended Complaint.

### I. *Subject matter jurisdiction*

28 U.S.C. § 2501 provides that "[e]very claim of which the United States Court of Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues." Because section 2501 is a jurisdictional requirement, *Martinez v. United States*, 333 F.3d 1295, 1316 (Fed.Cir.2003), the court must assure itself that plaintiffs filed their claim before this court in a timely manner, *see Barnett v. Brown*, 83 F.3d 1380, 1383 (Fed.Cir.1996). Analysis of the impact of this statute requires the court to determine two operative dates: the date of accrual and the date of filing.

#### 1. *Jurisdiction over plaintiffs' takings claim*

■ With respect to plaintiffs' takings claim, the parties dispute the date of filing, not the date of accrual. Defendant takes the position that because the 2004 Amended Complaint was filed in the Court of Federal Claims on April 20, 2004, any claim can only be timely if it accrued no earlier than April 20, 1998—six years prior to the filing date. Plaintiffs contend that the operative filing date is not the filing date of the 2004 Amended Complaint, but the filing date of the 1993 Complaint—the original complaint before the district court.

In this battle over the filing date, both parties have neglected to identify, much less address, the accrual date. While the parties seem tacitly to agree that the 1993 Complaint was filed within six years of accrual, the court cannot make assumptions concerning necessary jurisdictional facts. Therefore, this court must address the 2004 Amended Complaint to determine if plaintiffs properly invoke jurisdiction.

First, with respect to the accrual date, "[a] claim accrues when all events have occurred that fix the alleged liability of the Government and entitle plaintiff to institute an action." *Creppel v. United States*, 41 F.3d 627, 631 (Fed.Cir.1994). Plaintiffs allege that the Government has taken, for public use, their "right to receive a stipulated volume of water from the New Melones Reservoir[.]" 2004 Complaint ¶ 28. The 2004 Amended Complaint presents only two dates that possibly could serve as an accrual date. First, plaintiffs allege that "on January 1, 1989 [the Government] notified SEWD and Central that water was available in New Melones Reservoir pursuant to their contracts, [but the Government] in fact failed and continues to refuse (with minor exceptions) to make that water available to plaintiffs in accordance with the terms of their contracts." *Id.* ¶ 23. Second—and the only other date alleged that indicates the Government's taking of a right to receive New Melones water—is an allegation falling under the heading of plaintiffs' breach of contract claim, which is incorporated by reference into their takings claim. Plaintiffs allege that "[b]eginning on or about June 28, 1993, and continuing to the present date, defendant breached these contracts by failing and refusing to deliver to plaintiffs, and to the water users whom they represent, the quantities of water required by their written contracts." *Id.* ¶ 25.

The only two relevant dates are January 1, 1989, and June 28, 1993. Both dates fall within six years of the date of filing of the 1993 Complaint. This court therefore need not decide which date is the date of accrual if the filing date of the 1993 Complaint constitutes the filing date of plaintiffs' claims now before the court. Based on this assumption, the timeliness of plaintiffs' takings claim would turn on whether plaintiffs can rely on the 1993 filing date of the complaint in federal district court as the operative filing date. More than sufficient authority allows them to do so.

Section 2501 only requires that a claim over which the Court of Federal Claims has

jurisdiction under the Tucker Act, 28 U.S.C. § 1491(a)(1) (2000), be "filed within six years after such claim first accrues." The statute does not expressly define "filed," nor does it—at least on its face—require the claim to be filed at the Court of Federal Claims; the claim just must be "filed." This action originally was not filed in the Court of Federal Claims. Instead, plaintiffs filed in 1993 a takings claim in federal district court. That court ordered the takings claim transferred to the Court of Federal Claims. The statute authorizing such a transfer is 28 U.S.C. § 1631, which provides:

> Whenever a civil action is filed in a court ... and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed or noticed, and the action or appeal shall proceed as if it had been filed in or noticed for the court to which it is transferred on the date upon which it was actually filed in or noticed for the court from which it is transferred.

Section 1631 is not a jurisdictional grant, and the district court's determination that the action "could have been brought" before the transferee court does not relieve or otherwise exempt a plaintiff from meeting its burden to establish jurisdiction before the transferee court. *See Awad v. United States*, 301 F.3d 1367, 1375 (Fed.Cir.2002) (affirming district court's transfer order to Court of Federal Claims, while authorizing transferee court to decide "in the first instance" whether it has jurisdiction); *Aetna Cas. & Sur. Co. v. United States*, 228 Ct.Cl. 146, 151, 655 F.2d 1047, 1051 (1981) ("Transfer of this case from the district court does not found jurisdiction here, and if these claims are not within one of the categories enumerated by the Tucker Act, the petitions must be dismissed." (citation omitted)).

Despite requiring plaintiffs to establish jurisdiction in the Court of Federal Claims without regard to the transferor court's findings, section 1631 does have one binding effect on the jurisdiction of the Court of

Federal Claims: "[T]he action *shall proceed* as if it had been filed in ... [the transferee court] on the date upon which it was actually filed in ... [the transferor court.]" 28 U.S.C. § 1631 (emphasis added). Thus, no question is present that the filing date, for purposes of the Tucker Act's six-year statute of limitations, is the date on which the action was filed in district court.[8] *See Henke v. United States*, 60 F.3d 795, 800 (Fed.Cir. 1995) ("Had [plaintiff's] case been transferred by the district court to cure the want of jurisdiction, pursuant to 28 U.S.C. § 1631, the date of filing in the district court would be taken as the date of commencing the action in the Court of Federal Claims.").

Defendant does not address section 1631 in its argument. Instead, it argues that Judge Wanger dismissed plaintiffs' takings claim in 1994 and that plaintiffs cannot proceed because they failed to pursue their claim in the Court of Federal Claims until ten years later. Plaintiffs rejoin that the 1994 Dismissal Order was a "mere memorandum decision" and that the district court "retains jurisdiction until a final judgment is issued and notice of appeal is filed." Pls.' Br. filed July 22, 2004, at 11–12 n. 6. Defendant does not suggest that the district court certified a judgment under RCFC 54(b). Without certification "the order or other form of decision is subject to revision at any time before the entry of judgment[.]" RCFC 54(b).

This court's review of the record of the action in federal district court, as supplied by the parties, shows that the takings claim indeed was dismissed. The 1994 Dismissal Order, which was styled as "Memorandum Opinion and Order," stated: "[P]laintiffs' fifth claims for a governmental taking without just compensation in violation of the Fifth Amendment are GRANTED, with ten days leave to amend, and without prejudice to bringing that claim in the Court of Claims." 1994 Dismissal Order at 87.

Defendant's arguments and authorities are not persuasive that the 1994 Dismissal Order has significance to the bar of the statute of limitations. This is no occasion, and there is

---

8. Defendant's presentation of an issue regarding the filing date appears to be based on an erroneous assumption that the court has discretion to choose a filing date.

no need, to inquire into the effect of the memorandum dismissal, speculate as to the reasons why Judge Wanger retained jurisdiction, or ascribe any effect to the parties' stipulation of transfer other than to note that the 1994 Dismissal Order preceded transfer pursuant to 28 U.S.C. § 1631. The fact is that the only operative document in this regard is the 2004 Transfer Order, by which Judge Wanger transferred plaintiffs' takings claim to the Court of Federal Claims. *See Smith v. Sec'y of the Army,* 384 F.3d 1288, 1291, 2004 WL 2071303, at *2 (Fed.Cir.2004) (stating that court reviews "decision to transfer").

What defendant seems to be arguing is an untimely attack on the transfer order itself. Defendant's argument is that the takings claim was dismissed and that the 1994 Dismissal Order required plaintiffs to file or forfeit pursuit of their claims. Defendant cannot ignore the requirement of section 1631 that the transferor court enter an order of dismissal and/or transfer, but the court did not do so until some ten years later.

Defendant's related argument, that plaintiffs waited over ten years to pursue their takings claim before the Court of Federal Claims, is misplaced for the same reason. This argument, which resonates of laches, would have been properly addressed to Judge Wanger in opposition to plaintiffs' motion to transfer. A mandatory finding to effectuate a 28 U.S.C. § 1631 transfer is that the transfer serves "the interests of justice." *Fed. Deposit Ins. Corp. v. Maco Bancorp, Inc.,* 125 F.3d 1446, 1448 (Fed.Cir.1997).[9] The federal defendants could have opposed plaintiffs' motion, arguing that it was not "in the interests of justice" to transfer plaintiffs' claim over ten years after the court dismissed the claim while specifically noting that the dismissal was "without prejudice to

bringing that claim in the Court of Claims[,]" 1994 Dismissal Order at 87.[10]

Regardless of hypothetical issues concerning the diligence of plaintiffs in pursuing their takings claim and of the federal defendants in failing to dispute the propriety of the transfer order before Judge Wanger, section 1631 conclusively establishes October 1, 1993, the filing date of the original complaint before the district court, as the operative filing date for purposes of 28 U.S.C. § 2501. Thus, with respect to their takings claim, the earliest possible accrual date occurred within six years of the date of filing in federal district court, and plaintiffs therefore complied with the jurisdictional requirements of section 2501.

2. *Jurisdiction over plaintiffs' breach of contract claim*

Defendant argues that plaintiffs' claim for breach of contract is also time-barred by 28 U.S.C. § 2501. In its moving papers, defendant refers to the face of the 2004 Amended Complaint, which alleges that "[b]eginning on or about June 28, 1993, and continuing to the present date, defendant breached [its water service contracts] by failing and refusing to deliver to plaintiffs, and to the water users whom they represent, the quantities of water required by the written contracts." 2004 Amended Complaint ¶ 25. Using June 28, 1993, as the accrual date for the breach of contract claim, the jurisdictional argument is that section 2501 would require plaintiffs to have filed that claim by June 28, 1999. Defendant concludes that because plaintiffs failed to assert a breach of contract claim in their 1993 Complaint and filed this action on April 20, 2004, the breach of contract claim is time-barred.

---

**9.** The transfer does not state a specific finding that the transfer served the "interests of justice." However, the judge granted the motion based on the attached stipulation, which made the recital.

**10.** Defendant stresses that it had no intention of "waiv[ing] the statute of limitations by stipulating to a transfer of Plaintiffs' takings claim." Def.'s Br. filed Aug. 9, 2004, at 3. Defendant cites cases for the proposition that, under section 1631, the district court was not empowered to decide whether the Court of Federal Claims has

jurisdiction. The dispositive question, however, is whether the statute of limitations bars plaintiffs' claim because they failed to pursue transfer for ten years. It is the court, not plaintiffs, that has the power to effect a transfer. It should be noted the Government did not waive any of its rights or prerequisites relevant to this inquiry. Defendant still could have argued that the filing of the initial action was itself untimely, which defendant does not press here.

Plaintiffs first respond by arguing that "[t]he district court and the parties all believed that the Plaintiffs' fifth cause of action (which was transferred to this Court) asserted claims for breach of contracts as well as a Fifth Amendment taking[.]" Pls.' Br. filed July 22, 2004, at 12.[11] Thus, section 1631—the transfer statute—governs determinations of the "filing date" for purposes of the time bar. Plaintiffs alternatively argue that, under the "relation back" doctrine, even if the 2004 Transfer Order did not transfer a contracts action, the filing date takes on the date of filing of the original 1993 Complaint.

This court is unpersuaded that the 2004 Transfer Order explicitly transferred a breach of contract claim. Plaintiffs rely on two documents. The first is the 1996 Summary Judgment Order, in which the court did describe the fifth cause of action of the 1993 Complaint as one alleging both claims. *See* 1996 Summary Judgment Order at 3. The second document is Plaintiffs' Motion and Stipulation for Transfer, where plaintiffs described the fifth cause of action as alleging both claims. *See* 2004 Transfer Motion and Stipulation at 2. The Government also referred to the fifth cause of action as one alleging both a takings and a breach of contract in its stipulation. *Id.* at 4. However, only two documents have operative effect: the 2004 Transfer Order and the 1993 Complaint. The former embodies the statute's precepts, with which no transfer otherwise could occur; the latter sets forth the claim transferred by the 2004 Transfer Order, *i.e.*, it is the referent.

The 2004 Transfer Order provides: "The Fifth Cause of Action from the October 1, 1993 Complaint in the case of *Stockton E. Water District v. United States*, No. CV–F–93–5896 OWW, is hereby transferred to the United States Court of Federal Claims." 2004 Transfer Order at 2. While this does not explicitly describe the nature of the claim transferred, it does transfer the fifth cause of action alleged in the 1993 Complaint. That cause of action, untitled as are the other four, includes three allegations, the first of which incorporates the factual allegations supporting the claims in the preceding paragraphs of the 1993 Complaint. The second two paragraphs recite:

62. If Defendant BUREAU operates the CVP as described herein and further operates the New Melones Unit in accord with THE PRESCRIPTION, both presently and in the future. [*sic* ] [Plaintiffs'] water supply will fail.

63. The failure of [Plaintiffs'] water supply is a taking of the vested property rights of [Plaintiffs] in which the other plaintiffs have a beneficial interest for which they will be entitled to just compensation under the Fifth Amendment of the United States Constitution.

1993 Complaint ¶¶ 62–63. The court concludes that the fifth cause of action of the 1993 Complaint alleges a takings theory. Therefore, notwithstanding any understandings or non-operative judicial references to the contrary, the 2004 Transfer Order transferred only a claim alleging a takings.

█ Plaintiffs' alternative argument under the "relation back" doctrine, however, is convincing. The "relation back" doctrine enables parties to amend pleadings with new "claims or defenses" in certain circumstances after and despite the expiration of the applicable statute of limitations. *See* RCFC 15(c). Originating in common law, the doctrine has since been codified and broadened in its application by Rule 15(c) of both the Federal Rules of Civil Procedure and its counterpart in the Rules of the Court of Federal Claims.

█ RCFC 15(c) provides, in pertinent part: "An amendment of a pleading relates back to the date of the original pleading when ... the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading[.]" The rationale of the "relation back" doctrine, which is inextricably linked to the rationale of the statute of limitations, "is that a party who has been notified of litigation concerning a particular occurrence has

---

11. Plaintiffs do not suggest that any other cause of action in the 1993 Complaint alleged a breach of contract claim.

been given all the notice that statutes of limitations were intended to provide." *Baldwin County Welcome Ctr. v. Brown*, 466 U.S. 147, 150, 104 S.Ct. 1723, 80 L.Ed.2d 196 (1984). *See also* FRCP 15(c) advisory committee's notes ("[T]he chief consideration of policy is that of the statute of limitations[.]"). As stated by this court's predecessor:

> A primary purpose of statutes of limitations is "to ensure that parties are given formal and seasonable notice that a claim is being asserted against them[.]" . . . "[A] party who is notified of litigation concerning a given transaction or occurrence is entitled to no more protection from statutes of limitations than one who is informed of the precise legal description of the rights sought to be enforced." Thus notice is the test, and it is built-into [sic] the rule's requirement that the amended pleading arise out of the same "conduct, transaction, or occurrence."

*Snoqualmie Tribe of Indians v. United States*, 178 Ct.Cl. 570, 587, 372 F.2d 951, 960 (1967) (citations omitted).

 The facts alleged in the 1993 Complaint provide sufficient notice of a breach of contract claim. The 1993 Complaint alleged the existence of the contracts and the Government's breach. Not only does the breach of contract claim arise out of the same conduct, transaction, or occurrence that was pleaded in support of the takings claim, but all operative facts for both legal theories were made apparent. Particularly in this context, whether the theory is a takings or a breach of contract, both theories are based on the same set of facts "that have been a part of this proceeding since its inception." *J.L. Simmons Co. v. United States*, 188 Ct. Cl. 684, 730, 412 F.2d 1360, 1386–87 (1969) (holding that amendment asserting takings claim to complaint that alleged breach of contract related back to original filing date).[12] As the Court of Claims declared in a similar situation, "It would be a return to the old 'cause of action' approach [13] to declare the claim time-barred because the original theory of relief was 'changes' or breach of contract, and the consequences of those defective procedures are now characterized as a 'taking.' " *Id.*

Defendant's objection is based on its argument-rejected by the court-that plaintiffs cannot receive the benefits of the relation back doctrine when the original claim had been dismissed and was non-viable. Def.'s Br. filed Aug. 9, 2004, at 5–6. The Government did not object to Judge Wanger's transferring the claim.[14] Based on the transfer order itself, the district court's authority to enter it, and the viability of the claim transferred,[15] the court finds that takings claim was transferred, upon which the later-pleaded breach of contract was based.

Because the contract claim relates back to the filing date of the 1993 Complaint, and because it appears on the face of the complaint that the date of accrual for the breach of contract claim occurred within six years before the filing date, no statutory bar prevents consideration of this claim.[16]

---

12. Even defendant recognizes that the breach of contract claim is merely a different theory presented in the 2004 Amended Complaint. *See* Def.'s Br. filed June 21, 2004, at 15 ("However, Plaintiffs did not seek damages under a breach of contract *theory* until April 20, 2004[.]" (emphasis added)).

13. The old "cause of action" approach refers to the original common-law relation back doctrine, where courts would not allow an amendment to relate back if it added a new "cause of action," regardless of whether it was based on the same transaction or occurrence alleged in the complaint. *See generally* 61B AM. JUR. 2D *Pleading* § 850 (1999).

> Criticized as being too narrow and restrictive, and out of harmony with the Federal Rules of Civil Procedure, the cause of action concept has been rejected by the courts in recent years, the emphasis having shifted from state theories of law as to what constitutes a cause of action to the specific conduct of the opponent upon which the party relies to enforce the claim or defense.

*Id.*

14. A party cannot amend a complaint after transfer to cure lack of jurisdiction in the transferor court. *Cf. Smith*, 384 F.3d at 1294 n. 1, 2004 WL 2071303 at *5 n. 1.

15. Although the Government cannot stipulate to jurisdiction, it can bear the consequences of agreeing that it is in the interests of justice to transfer a claim.

16. Defendant did not move to dismiss plaintiffs' 2004 Amended Complaint on the basis that plaintiffs did not comply with RCFC 3.1, which ap-

## II. *Failure to state a claim upon which relief can be granted*

Defendant also moves that plaintiffs' takings claim should be dismissed for failure to state a claim upon which relief can be granted. Its moving papers attempt to invoke issue preclusion, collateral estoppel, and the law of the case doctrine. Recognizing the absence of finality with respect to the rulings that it urged as the basis of preclusive effect, *see* Def.'s Br. filed Aug. 9, 2004, at 8, defendant now relies solely on law of the case to foreclose plaintiffs' takings claim. This court responds accordingly.

■■■ The law of the case doctrine authorizes a court to "refuse to reopen or reconsider what has already been decided at an earlier stage of the litigation." *Suel v. Sec'y of Health & Human Servs.*, 192 F.3d 981, 985 (Fed.Cir.1999). It is a judicially created doctrine, preventing parties from getting a "second bite at the apple" and "operat[ing] to protect the settled expectations of the parties and promote orderly development of the case." *Id.* at 985 (internal quotations omitted). The doctrine only applies "to issues actually that were decided, either explicitly or by necessary implication, in the earlier litigation." *Toro Co. v. White Consol. Indus., Inc.*, 383 F.3d 1326, 1335, 2004 WL 2026407, at *8 (Fed.Cir.2004). However, the doctrine is "not a limit on [the court's] power." *Messenger v. Anderson*, 225 U.S. 436, 444, 32 S.Ct. 739, 56 L.Ed. 1152 (1912) (Holmes, J.). "A court has the power to revisit prior decisions of its own or of a coordinate court in any circumstance, although as a rule courts should be loath[ ] to do so in the absence of extraordinary circumstances ...." *Chris-*

*tianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988); *see also The Toro Co.*, 383 F.3d at 1337, 2004 WL 2026407, at *9 (listing other circumstances warranting "[a] departure from law of the case").

■■■ Defendant takes the position that the district court already rejected plaintiffs' claims to property rights to New Melones water. As plaintiffs must demonstrate a cognizable property right to properly plead a Fifth Amendment takings claim, *Chancellor Manor v. United States*, 331 F.3d 891, 901 (Fed.Cir.2003), defendant argues that their takings claim fails as a matter of law. Certainly, defendant's portrayal of the earlier decisions by the district court, if accurate, would place the issue of a cognizable property right squarely within the law of the case doctrine. The issue for decision then would be whether any circumstances exist that would justify revisiting the ruling. The antecedent inquiry, however, is whether the district court actually decided the issue.

■■■ Defendant refers to Judge Wanger's decision in the 1996 Summary Judgment Ruling as adjudicating and deciding against plaintiffs' claim to a property right. Two non-consecutive sentences from the opinion are quoted: " 'Plaintiffs do not have cognizable unalterable property rights under federal law ... [n]or do Plaintiffs have such rights under [California] Water Code § 11460.' " Def.'s Br. filed June 21, 2004, at 20 (quoting 1996 Summary Judgment Ruling at 48–49 (alterations in original)). Defendant did not include one intervening sentence: "The full extent of [plaintiffs'] contract rights requires evidentiary development." 1996 Summary Judgment Ruling at 49.[17]

---

plies to actions transferred to the Court of Federal Claims. That rule directs a plaintiff, after a case is transferred, to file the "complaint filed in the other court, containing the necessary changes in the caption[.]" RCFC 3.1(a)(2). Alternatively, plaintiff may file an amended complaint, but the amended complaint can only "set[ ] forth the claim or claims transferred." *Id.*

Defendant perhaps could have argued that Rule 3.1 does not allow plaintiffs to file an amended complaint that includes claims not transferred specifically. Thus, the argument might have faulted the 2004 Amended Complaint as not properly before the court under Rule 3.1, or defendant could have insisted that plaintiffs comply with the RCFC 15 requirement first to

seek leave from the court or consent from defendant. *See* RCFC 15(a). Defendant also could have argued that even a RCFC 15 motion for leave to file an amended complaint would not be timely until plaintiffs first complied with Rule 3.1 by filing either an essential duplicate of the original transferred complaint or an "amended complaint" that did not include an additional claim. Thereafter, plaintiffs could have requested leave to amend the complaint, and their request would have met with success as the new cause of action is derivative of the transferred claim.

17. This court notes that "it is inappropriate to quote mere language from a court opinion, while disregarding the actual holding of the court and

This section of the 1996 Summary Judgment Ruling addressed plaintiffs' claim that the federal defendants violated their Fifth Amendment rights to due process by repudiating their contracts. 1996 Summary Judgment Ruling at 48. Plaintiffs pursued a claim in the district court that required a showing of a cognizable property interest, and they again plead a cognizable property interest in the 2004 Amended Complaint in the Court of Federal Claims. A substantive due process claim, like the takings claim, requires the existence of a valid property interest entitled to Fifth Amendment protection. *See Brock v. Roadway Exp., Inc.*, 481 U.S. 252, 260–62, 107 S.Ct. 1740, 95 L.Ed.2d 239 (1987).

Under both the due process and the takings clause, property interests are not created by the Constitution itself, but are derived from other sources "such as state, federal, or common law." *Am. Pelagic Fishing Co. v. United States*, 379 F.3d 1363, 1376–77 (Fed. Cir.2004); *see also Bd. of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Thus, to the extent that the district court ruled against the existence of a property right derived from a particular source, that ruling is law of the case. Plaintiffs do not counter this point.

The 1996 Summary Judgment Ruling contains three consecutive sentences that, when read in context, show that Judge Wanger had held, at that time, that plaintiffs "do not have cognizable unalterable property rights" under (1) federal law and (2) the California Watershed Protection Act. *See* 1996 Summary Judgment Ruling at 49. The court makes special mention that "the full extent of their contract rights require evidentiary development[,]" *id.*, thereby reserving ruling on whether plaintiffs obtained a property right from the contract itself. As noted, defendant failed to explain in its moving papers that Judge Wanger issued a supplemental order that withdrew the discussion and ruling with regard to plaintiffs' state-law based water

rights claim.[18] *See* 1996 Supplemental Order at 3. Judge Wanger had ordered supplemental briefing on precisely the issue of whether state law confers such a right, *id.*, and ultimately the court referred "all issues surrounding state law" to the SWRCB. 1997 Opinion at 34–37. Thus, when each opinion is read together, what the court decided was only that federal law did not provide a source of the cognizable property right; it reserved ruling on whether the contract or state law could do so.

Although recognizing that the district court partially withdrew its ruling, defendant submits that Judge Wanger reaffirmed its rejection of plaintiffs' property rights. *See* Def.'s Br. filed Aug. 9, 2004, at 9 n. 8. Defendant refers to the portion of the 1996 Supplemental Order in which Judge Wanger ordered the following: "Plaintiffs' motion for summary adjudication that repudiation of the Central and Stockton East Contracts under the CVPIA violates the Fifth Amendment is DENIED; Federal Defendants' motion for partial summary judgment that the government's actions do not violate the Fifth Amendment is GRANTED." 1996 Supplemental Order at 2.

Because the parties did not provide this court with the briefs under review by Judge Wanger, it is difficult to ascertain exactly what was argued at that time. However, the text of the referenced opinions belies defendant's proffered interpretation. In the 1996 Summary Judgment Ruling, discussion regarding the Fifth Amendment appears in one section of the opinion, a portion of which has been withdrawn. In that portion, when read in conjunction with the 1996 Supplemental Order, as this court already has explained, Judge Wanger would not rule whether either the contract or the California Watershed Protection Act provided a source for plaintiffs' property right. Thus, when Judge Wanger denied plaintiffs' motion for partial summary adjudication, the court did not thereby rule that plaintiffs could not state a

the factual pattern which gave rise to the quoted language." *Ill. Tool Works, Inc. v. Grip–Pak, Inc.*, 906 F.2d 679, 684 n. 5 (Fed.Cir.1990) (emphasis omitted).

**18.** The Federal Circuit has reminded that "[c]ounsel's obligation ... to the court[] is to know the record and present it accurately." *Pac–Tec, Inc. v. Amerace Corp.*, 903 F.2d 796, 804 n. 6 (Fed.Cir.1990).

valid Fifth Amendment claim. Similarly, when Judge Wanger ruled in favor of the federal defendants' motion for summary adjudication, he did so only with respect to whether federal law provided the source of a property right. Such a ruling is the only holding that follows from the actual text of the decision; the order at the end of the opinion is phrased broadly, but must be read consistent with the underlying rationale. Even defendant's own argument appears to admit that the holding was more limited than what may otherwise appear: "[The 1996 Supplemental Order] reaffirmed the [d]istrict [c]ourt's rejection of Plaintiffs' property rights claims *under federal law* [.]" Def.'s Br. filed Aug. 9, 2004, at 9 n. 8 (emphasis added).

Defendant therefore has not provided any record from the district court sufficient to invoke the law of the case doctrine. The action in the district court decided only that plaintiffs cannot rely on federal law as the source of a cognizable property interest. Consequently, law of the case does not preclude plaintiffs from pursuing a takings claim.

## CONCLUSION

Plaintiffs' claims are not time-barred by 28 U.S.C. § 2501, and the law of the case doctrine does not prevent plaintiffs from stating a claim upon which relief can be granted. Accordingly, based on the foregoing,

**IT IS ORDERED**, as follows:

1. Defendant's motion to dismiss the complaint is denied.

2. A scheduling order issued previously.