**Robert G. SMITH, Plaintiff–Appellant,**

v.

**SECRETARY OF THE ARMY, and Army Board for Correction of Military Records, Defendants–Appellees.**

No. 03–1623.

United States Court of Appeals, Federal Circuit.

DECIDED: Sept. 17, 2004.

Victoria J. Franklin–Sisson, Emond, Vines, Gorham & Waldrep, P.C., of Birmingham, AL, argued for plaintiff-appellant. On the brief was Victor Kelley.

Robert E. Kirschman, Jr., Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for defendants-appellees. With him on the

brief were Peter D. Keisler, Assistant Attorney General and David M. Cohen, Director. Of counsel on the brief were Lieutenant Colonel Vanessa Crockford and Major Gary P. Corn, Attorneys, United States Army, Army Litigation Division, of Arlington, VA.

Before LOURIE, RADER, and BRYSON, Circuit Judges.

BRYSON, Circuit Judge.

Robert G. Smith, a former officer in the United States Army, filed this action in the United States District Court for the Western District of Wisconsin, challenging the Army's decision not to promote him to the rank of colonel. The district court ruled that it lacked jurisdiction over Dr. Smith's claim under the Administrative Procedure Act and that Dr. Smith could have brought his action in the United States Court of Federal Claims under the Tucker Act. Accordingly, the district court transferred the case to the Court of Federal Claims pursuant to the federal transfer statute. Because we conclude that it is unclear from the record whether this action could have been brought in the Court of Federal Claims under the Tucker Act, we remand this case to the district court for further factual development.

I

Dr. Smith is an ophthalmologist who served for more than 20 years in the United States Army. In 1972, he accepted a commission in the Army's Medical Corps and began attending graduate school, where he studied anatomy. He earned a masters degree in anatomy in 1976. In 1974, two years after beginning his graduate program in anatomy, he entered medical school. Following graduation from medical school in 1978, he was awarded the rank of captain in the Army Reserve based on the four years of constructive credit he received for medical school. He continued to be a member of the Army Reserve until 1982 when he became an officer in the regular Army.

Dr. Smith was promoted to the rank of major in 1983 and to the rank of lieutenant colonel in 1990. Beginning in 1995 he was considered for promotion to colonel. The colonel selection board declined to promote him at that time, and he failed selection before each succeeding board until his retirement in 1999.

In 1992, Dr. Smith concluded that the Army had failed to award him constructive service credit for his post-graduate studies. As a result, he petitioned the Total Army Personnel Command to grant him additional constructive credit. Subsequently, in 1993, Dr. Smith's record was amended to adjust the date of his promotion to captain from 1978 to 1976. A constructive 1982 board then considered whether to constructively promote him to major as of 1982, but the board declined to do so. As a result, Dr. Smith's date of promotion to lieutenant colonel was also not adjusted. Dr. Smith sought review of that decision through the Army Board for the Correction of Military Records ("ABCMR"). The ABCMR denied his request for relief. In addition, the ABCMR determined that he had improperly been granted constructive credit for his post-graduate studies and revised his captain date of rank to the original date in 1978.

Dr. Smith retired from the Army in 1999. In April 2003, he filed an action in the United States District Court for the Western District of Wisconsin, in which he named the ABCMR and the Secretary of the Army as defendants. In his complaint, Dr. Smith alleged that the Army and the ABCMR had acted arbitrarily and capriciously in refusing to correct his military records. If he had been given timely and proper credit for his masters degree stud-

ies, he claimed, he would have been promoted to major and lieutenant colonel in 1980 and 1987, respectively. In that event, Dr. Smith alleged, he would have been considered for promotion to colonel in 1992, three years before his first actual consideration. He argued that the delay prejudiced his chances for promotion to colonel because in 1992 the selection rate for colonel was much higher than it was in 1995.

As a remedy, Dr. Smith asked the court to order that he be promoted to the rank of colonel, that the date of rank for his promotions to major and lieutenant colonel be corrected, that he be granted back pay and allowances as appropriate, and that he be transferred to the retired list at the rank of colonel. In the alternative, he asked the court to order that he be retroactively considered for promotion to colonel by a remedial selection board, that upon selection he be given back pay and allowances as appropriate, and that his transfer to the retired list be at the rank of colonel.

The government moved to dismiss the complaint for lack of subject matter jurisdiction on the ground that, in light of Dr. Smith's request for monetary damages, the Court of Federal Claims had exclusive jurisdiction over the case. The government also contended that the Administrative Procedure Act ("APA") did not waive sovereign immunity because Dr. Smith was seeking back pay, for which the Court of Federal Claims could provide an adequate remedy.

The district court agreed with the government that it lacked jurisdiction over the case, but instead of dismissing, the court transferred the case to the Court of Federal Claims pursuant to 28 U.S.C. § 1631. *Smith v. Sec'y of the Army*, No. 03–C–200–S (W.D.Wis. Aug. 7, 2003). The court ruled that "monetary relief is [Dr. Smith's]

sole object," because in his retired status, "the only benefit a retroactive promotion offers him is an opportunity to claim back pay." Because the district court concluded that the amount of back pay at issue was approximately $140,000, the court held that the case could be brought only in the Court of Federal Claims under the Tucker Act, 28 U.S.C. § 1491, and not in the district court under the APA, 5 U.S.C. § 702.

## II

### A

■ The federal transfer statute, 28 U.S.C. § 1631, permits a court to transfer an action to another court if the transferor court lacks jurisdiction to hear the case and the transferee court would have jurisdiction over the action. Dr. Smith contends that neither requirement of the transfer statute is met in this case. He argues that the relief he was seeking was primarily equitable in nature, and that for that reason the district court had jurisdiction over his action and the Court of Federal Claims did not. We have jurisdiction to review a district court's decision to transfer a case to the Court of Federal Claims pursuant to 28 U.S.C. § 1292(d)(4)(A).

Section 10(a) of the APA, 5 U.S.C. § 702, provides that a person "suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute" is entitled to judicial review of such a claim. The statute also waives sovereign immunity for an action "seeking relief other than money damages." In the absence of special statutory review proceedings, *see* 5 U.S.C. § 703, the general federal question statute, 28 U.S.C. § 1331, gives district courts jurisdiction to conduct the judicial review described in section 10(a) of the APA. *See Califano v. Sand-*

*ers,* 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977). The APA's waiver of sovereign immunity is limited, however, by section 10(c) of the APA, 5 U.S.C. § 704, which provides that judicial review is available only in the case of "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court." *See Mitchell v. United States,* 930 F.2d 893, 895 (Fed.Cir. 1991).

The Tucker Act, 28 U.S.C. § 1491, grants the Court of Federal Claims jurisdiction to render judgment against the United States for damages on various types of claims, including any non-tort claim founded on the Constitution, a statute, or an executive department regulation. *Id.* § 1491(a)(1). That portion of the Tucker Act has been construed to require that the source of substantive law on which the plaintiff relies be money-mandating, i.e., it must "fairly be interpreted as mandating compensation by the Federal Government for the damage sustained." *United States v. White Mountain Apache Tribe,* 537 U.S. 465, 472, 123 S.Ct. 1126, 155 L.Ed.2d 40 (2003), *quoting United States v. Testan,* 424 U.S. 392, 400, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976). The Tucker Act further states that in order to provide "an entire remedy and to complete the relief afforded by the judgment, the court may, as incident of and collateral to any such judgment, issue orders directing restoration to office or position, placement in appropriate duty or retirement status, and correction of applicable records." 28 U.S.C. § 1491(a)(2). The Act gives the district courts and the Court of Federal Claims concurrent jurisdiction over any action falling within its terms in which the claim does not exceed $10,000 in amount; claims in excess of $10,000 may be brought only in the Court of Federal Claims. 28 U.S.C. § 1346(a)(2).

## B

Dr. Smith contends that the APA entitles him to judicial review in the district court because his action arises under the laws of the United States; because he is seeking "relief other than money damages," namely, a promotion or consideration for a promotion; and because no other court can provide an adequate remedy for the claims set forth in his complaint. The government responds that the APA does not entitle Dr. Smith to judicial review in the district court because his complaint seeks money damages and ancillary equitable relief, and that an action in the Court of Federal Claims under the Tucker Act would provide an adequate remedy for his claims.

If an action under the Tucker Act in the Court of Federal Claims would provide an adequate remedy for Dr. Smith's claims, the district court would be barred by 5 U.S.C. § 704 from entertaining his action under the APA, and the transfer order would be proper. We therefore turn to the question whether the Court of Federal Claims would be able to supply the relief that Dr. Smith seeks if he could establish his entitlement to it.

Because the Tucker Act authorizes the Court of Federal Claims to grant ancillary equitable relief, including "placement in appropriate duty or retirement status, and correction of applicable records," the Court of Federal Claims can provide Dr. Smith all the equitable relief he requests in the event he has a right to money damages under a money-mandating statute or regulation. That point is illustrated by this court's decision in *Mitchell v. United States,* 930 F.2d 893 (Fed.Cir.1991). In *Mitchell,* a serviceman sought an extension of his term of active duty so that he could qualify for retirement with 20 years of service. Following his discharge, the ser-

viceman sought correction of his records by the Air Force Board for the Correction of Military Records. After his request was denied, he filed suit in a federal district court seeking active duty credit, back pay, and reinstatement to active duty status until he was eligible for retirement.

■ On appeal, this court addressed the question whether section 10(c) of the APA barred the case from being brought as an APA nonstatutory review action in district court. Drawing on the Supreme Court's decision in *Bowen v. Massachusetts,* 487 U.S. 879, 108 S.Ct. 2722, 101 L.Ed.2d 749 (1988), this court held that because a Tucker Act action in the Claims Court would provide the serviceman with an adequate judicial remedy, his APA action in the district court was barred. *Mitchell,* 930 F.2d at 896–97. In *Bowen,* the Supreme Court reasoned that the Back Pay Act, 5 U.S.C. § 5596(b), was a money-mandating statute and that the Tucker Act provided an adequate judicial remedy for claimants seeking back pay under that Act. *Bowen,* 487 U.S. at 905–06, 108 S.Ct. 2722. By analogy, the *Mitchell* court held that the Tucker Act provides an adequate remedy to claimants such as Mitchell who were seeking back pay under the Military Pay Act, 37 U.S.C. § 204. The court explained that the availability of ancillary equitable remedies under the Tucker Act meant that the Court of Federal Claims could provide Mitchell with the adjustment in military status that he sought ancillary to his pay claim and that 5 U.S.C. § 704 therefore deprived the district court of jurisdiction. *Mitchell,* 930 F.2d at 896–97. *Mitchell* thus stands for the proposition that the Court of Federal Claims can offer a service member such as Dr. Smith an adequate remedy for a claim relating to military status (and thus deprive the district court of jurisdiction over the claim) if the service member's claim constitutes a request for money (together with a request for ancillary equitable relief) and if the request is based on a money-mandating statute, such as the Military Pay Act. We therefore turn to the question whether Dr. Smith's claim satisfies those two requirements.

1. *Request for money.*

■ In his initial complaint, Dr. Smith sought to have the date of his promotions to major and lieutenant colonel corrected and the decision not to consider him for promotion to colonel in 1992 set aside. In addition, he requested "that he be granted back pay and allowances as appropriate to include restoration of the corrected date of rank for promotion to major and to lieutenant colonel, and that his transfer to the retired list be at the rank of colonel (O–6), plus such other and further relief this Court deems just and proper." In the alternative, Dr. Smith requested that the court order that he be retroactively considered for promotion to colonel by a remedial selection board, "that upon selection he be granted back pay and allowances as appropriate," and that his transfer to the retired list be at the rank of colonel.

After the government filed its motion to dismiss Dr. Smith's complaint on jurisdictional grounds, Dr. Smith filed his first amended complaint. The only difference between the original complaint and the first amended complaint was the omission of the words "plus such other and further relief this Court deems just and proper" in the final two paragraphs of the complaint. Thus, contrary to Dr. Smith's contention in his brief on appeal, both his original complaint and his first amended complaint plainly requested money damages in the form of back pay and allowances as relief for the denial of constructive service credit of which he complains.

Dr. Smith contends that his complaint does not include a request for monetary damages because he is not exclusively, or even principally, concerned with monetary relief. Instead, he contends, his interest is in the pride and satisfaction associated with promotion to the rank of colonel. The subjective motivations underlying his action, however, do not govern the issue of jurisdiction. In *Holley v. United States*, 124 F.3d 1462 (Fed.Cir.1997), this court rejected the argument that the Court of Federal Claims lacked jurisdiction over a military discipline case because the plaintiff's primary motivation was to clear his name. The court explained that regardless of the plaintiff's motivation for filing the action, the plaintiff had pleaded a monetary claim that satisfied the jurisdictional requirements of the Tucker Act, and the Court of Federal Claims therefore had jurisdiction over his claim. 124 F.3d at 1466. Similarly, in this case despite Dr. Smith's assertion that he is not motivated by the prospect of reaping financial benefits from a retroactive promotion, both his initial complaint and his first amended complaint include a request for monetary damages.[1]

### 2. *Money-mandating statute.*

■ The next question is whether Dr. Smith's monetary claim is supported by a money-mandating statute. The government argues that Dr. Smith's request for back pay based on a failure to promote him suffices to provide Tucker Act jurisdiction. In its brief before the district court, the government specifically pointed to the Military Pay Act, 37 U.S.C. § 204, as the applicable money-mandating stat-

ute. It is well established that the Military Pay Act is a money-mandating statute. *See Dysart v. United States*, 369 F.3d 1303, 1315 (Fed.Cir.2004). The question remains, however, whether the Military Pay Act could provide a monetary remedy under the circumstances of this case.

■ As a general matter, a service member is entitled only to the salary of the rank to which he is appointed and in which he serves. *See James v. Caldera*, 159 F.3d 573, 582 (Fed.Cir.1998); *Dodson v. United States*, 988 F.2d 1199, 1208 (Fed. Cir.1993); *Skinner v. United States*, 219 Ct.Cl. 322, 594 F.2d 824, 830 (1979). For that reason, in a challenge to a decision not to promote, the Military Pay Act ordinarily does not give rise to a right to the pay of the higher rank for which the plaintiff was not selected. *See Law v. United States*, 11 F.3d 1061, 1064 (Fed.Cir.1993); *Howell v. United States*, 230 Ct.Cl. 816, 817 (1982); *Knightly v. United States*, 227 Ct.Cl. 767, 769 (1981) ("We do not have jurisdiction of a back pay claim predicated on a promotion not received.").

■ There are two recognized exceptions to that general rule. Under the first exception, an action for money arises under the Military Pay Act in the unusual case in which, on the plaintiff's legal theory, "there is a clear-cut legal entitlement" to the promotion in question, *Skinner*, 594 F.2d at 830, i.e., he has satisfied all the legal requirements for promotion, but the military has refused to recognize his status. *See Dysart*, 369 F.3d at 1315–16; *James*, 159 F.3d at 582; *Law*, 11 F.3d at 1065 ("Law is not asking the Claims Court

---

1. Dr. Smith requests that this court permit him to amend his complaint a second time to omit the request for money damages from his claim. He had an opportunity to make such an amendment in the district court, however, and he failed to do so. That by itself is a

sufficient reason not to permit him to amend his complaint on appeal. *See Mills v. Maine*, 118 F.3d 37, 53 (1st Cir.1997). Whether the district court will permit him to amend his complaint a second time on remand is for that court to determine.

to order his promotion but to recognize that it had occurred."). Under the second exception, an action for money arises under the Military Pay Act when the decision not to promote the service member leads to the service member's compelled discharge. If, in such a case, the effect of an order voiding the nonpromotion decision would be to give the service member a right to continue in the service at his previous rank, he would have a claim for the pay lost because of his improper separation. In that instance, the Military Pay Act would give the service member a right to back pay, because the Act "confers on an officer the right to pay of the rank he was appointed to up until he is properly separated from the service." *Sanders v. United States*, 219 Ct.Cl. 285, 594 F.2d 804, 810 (1979); *see also Ruth v. United States*, 378 F.3d 1371, 1375 (Fed.Cir.2004); *Martinez v. United States*, 333 F.3d 1295, 1303 (Fed.Cir.2003) (en banc).

The first exception does not apply in this case, because there is no suggestion that Dr. Smith enjoyed a clear-cut legal right to promotion to the rank of colonel; rather, his claim is that if he had been given the constructive credit to which he was entitled he would have been considered for promotion to colonel earlier, when his chance for promotion would have been greater.[2] Therefore, in order to determine whether the Tucker Act would provide an adequate remedy for Dr. Smith's claims, it is necessary to determine whether the second exception applies in this case.

██ For the second exception to apply, a service member's discharge must be involuntary. That is because if the service member's separation from the service is voluntary, such as pursuant to a voluntary retirement, the Military Pay Act does not impose on the government any continuing obligation to pay the service member. For that reason, this court has repeatedly held that relief under the Tucker Act is not available in the typical military promotion case if the service member voluntarily left the service. *See Moyer v. United States*, 190 F.3d 1314, 1318 (Fed.Cir.1999); *Tippett v. United States*, 185 F.3d 1250, 1255 (Fed.Cir.1999); *Holley*, 124 F.3d at 1465; *Adkins v. United States*, 68 F.3d 1317, 1321 (Fed.Cir.1995); *Sammt v. United States*, 780 F.2d 31, 32–33 (Fed.Cir.1985); *Austin v. United States*, 206 Ct.Cl. 719, 723 (1975). *Cf. McHenry v. United States*, 367 F.3d 1370, 1376–77 (Fed.Cir.2004) (holding that some claims, such as claims to disability benefits, may survive a voluntary retirement). Moreover, in order for the second exception to apply, the relief that is sought and that the court is empowered to grant—such as vacating a nonpromotion decision that was compromised by legal error—must result in rendering the service member's discharge improper, thus entitling the service member to a monetary remedy. *James*, 159 F.3d at 580–82.

██ Unfortunately, the record in this case is unclear with respect to both of those questions. First, the record does not reflect whether Dr. Smith's retirement was voluntary, and the parties have not addressed that question either in this court or in the district court. The district court will therefore need to determine whether Dr. Smith's retirement was voluntary or involuntary in order to determine whether

---

**2.** The same is true of Dr. Smith's request for adjustment in the date of rank for his promotions to major and lieutenant colonel. The claim that he should have been given earlier consideration for those promotions does not carry with it an entitlement to retroactive pay at the pay level for those ranks before he was actually promoted. *See, e.g., Roseman*, 207 Ct.Cl. 998, 521 F.2d 1406 (1975).

this action was properly transferred to the Court of Federal Claims.[3]

It is likewise unclear whether, even assuming Dr. Smith was involuntarily discharged, an order granting Dr. Smith additional constructive service credit for his post-graduate studies would render his discharge improper. Unlike in many cases involving "double passover" statutes that require lower-ranking officers to be discharged if they are twice passed over for promotion, see 10 U.S.C. §§ 631–632, lieutenant colonels such as Dr. Smith are subject to a different regime. The statute governing the retirement of lieutenant colonels contains no "double passover" provision, but instead requires any lieutenant colonel "who is not on a list of officers recommended for promotion to the regular grade of colonel" to be retired "on the first day of the month after the month in which he completes 28 years of active commissioned service." 10 U.S.C. § 633. Similar statutes govern the retirement of Army colonels and general officers, as well as officers of equivalent rank in the other services. 10 U.S.C. §§ 634–636.

Because those statutes make the time of compulsory retirement turn on the number of years an officer has been in active commissioned service, rather than on the number of times the officer has been passed over for promotion, a successful challenge to a promotion passover decision will not necessarily entitle the officer to reinstatement and back pay. That is, if the officer had completed the maximum period of service for an officer of his rank, an order by the court voiding a passover decision would not have the effect of allowing the

officer to continue in rank for a period longer than is permitted by statute. In such a case, the officer would not have a Tucker Act claim for money under the Military Pay Act, because no order that the court could lawfully enter would entitle the officer to back pay.

The Court of Claims drew that distinction in Koster v. United States, 231 Ct.Cl. 301, 685 F.2d 407 (1982). The plaintiff, a brigadier general in the Army, claimed that he was passed over for promotion to major general because of objectionable material in his officer efficiency reports. Following the passovers, General Koster was required to retire when he reached the statutory limit of five years of service as a brigadier general. The court noted that because it could not lawfully order his promotion, the most it could do by way of relief was to require reconsideration of the nonpromotion decision based on newly constituted officer efficiency reports. Because of the five-year statutory limit on the period that General Koster could serve as a brigadier general, however, the relief the court was empowered to grant "would not bring money with it." Id. at 413. Accordingly, the court concluded that it lacked jurisdiction over General Koster's claim. The court explained the difference between the case before it and the more common "double passover" cases involving lower ranking officers:

We note that this case is not like our cases that have found jurisdiction when a serviceman has been mandatorily terminated after two passovers.... In those cases, the voiding of a passover vitiates the ground on which termination

---

3. Our case law addresses in some detail what constitutes an involuntary discharge. See, e.g., Moyer, 190 F.3d at 1318; Ricks v. United States, 278 F.3d 1360, 1363–64 (Fed.Cir. 2002); Rigsbee v. United States, 226 F.3d 1376, 1378 (Fed.Cir.2000); Sammt, 780 F.2d at 32.

was forced, allowing reinstatement and a resultant money claim for lost active pay. Here, however, plaintiff has served his 5 years, and voiding a passover would not change that.

685 F.2d at 413.

In this case, as in *Koster*, the service member's eligibility to continue in service was based on the length of his service, not the number of times he had been passed over for promotion. Accordingly, if Dr. Smith was required to retire because he had reached the end of the 28 years of active commissioned service, the Court of Federal Claims would not be able to offer him relief that would have monetary consequences. In that event, he would not have an adequate remedy for his claims in the Court of Federal Claims.

Again, however, the record does not make clear whether Dr. Smith's retirement was compelled by the statutory 28–year period. If he was required to retire early, or if he was forced to retire involuntarily for some reason other than the expiration of the statutory period for his service in the rank of lieutenant colonel, he would still have a claim for money that could be brought before the Court of Federal Claims. *See Adkins*, 68 F.3d at 1321. That issue, too, involves factual matters that are not addressed in the record before us and should be addressed by the district court on remand.

## III

Accordingly, we remand this case to the district court to determine whether Dr. Smith's retirement was voluntary and whether an order granting Dr. Smith the additional constructive service credit he seeks would raise a monetary claim under the Military Pay Act. That determination, in turn, will likely dictate whether a transfer to the Court of Federal Claims is permitted in this case, or whether the case will remain in the district court, although in that event Dr. Smith will be limited, in light of 5 U.S.C. § 702, to his claims for equitable relief.[4]

Each party shall bear its own costs for this appeal.

*REMANDED.*

4. Dr. Smith argues that in the event it is determined that the Tucker Act applies to the monetary claim in this case, his request for equitable relief should be severed and remain in the district court. We agree with the government that it would be improper to divide this case into two parts based on the character of the remedies sought. Dr. Smith has a single claim for constructive service credit and the benefits flowing from it; the fact that a plaintiff seeks different kinds of remedies does not justify allowing him to litigate the same claim in multiple forums. That is particularly true in this setting because if the Court of Federal Claims can grant relief on his monetary claims, it can grant appropriate equitable relief as well; on the other hand, if the Court of Federal Claims is not authorized to grant monetary relief, there is no other waiver of sovereign immunity available to Dr. Smith with respect to a claim for money damages.