**Danny T. BARNES, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 99–883C.

United States Court of Federal Claims.

June 22, 2005.

Eugene R. Fidell, Washington, D.C., for plaintiff. Of counsel was Charlotte E. Cluverius, Washington, D.C.

Douglas K. Mickle, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant. With him on the briefs were Peter D. Keisler, Assistant Attorney General, David M. Cohen, Director, and Bryant G. Snee, Assistant Director. Of counsel was Capt. Thomas B. Merrit, Jr., United States Marine Corps, Department of the Navy, Office of the Judge Advocate General, General Litigation Division, Washington, D.C.

### OPINION AND ORDER

MEROW, Senior Judge.

Lt. Barnes enlisted in the Navy on June 20, 1983, and began his Naval Reserve Officer Training on August 11, 1984. Administrative Record ("A.R.") I at 1, 40. He was promoted to ensign on May 13, 1988, to lieutenant junior grade on May 25, 1990, and to lieutenant on June 1, 1992. A.R. at 119–21. On April 30, 1997, Lt. Barnes was selected for promotion to lieutenant commander by the Fiscal Year 1998 Promotion Board. A.R. III at 2–6. The Secretary of the Navy forwarded the Promotion Board's report, including Lt. Barnes' name, to the Secretary of Defense for approval on August 29, 1997. A.R. III at 1. On September 30, 1997, the Secretary of Defense, on the President's behalf, approved the Promotion Board's selections. *Id.* On October 29, 1997, Lt. Barnes' nomination for promotion to lieutenant com-

mander was submitted to the Senate, 143 Cong. Rec. S11390, S11391 (Oct. 29, 1997), and was subsequently confirmed. 143 Cong. Rec. S12214–03 (Nov. 8, 1997).

Lt. Barnes was not appointed to a lieutenant commander position, and on September 8, 1998, the Chief of Naval Personnel notified Lt. Barnes that the Secretary of the Navy was considering removing his name from the promotion list. A.R. IV at 10. On March 22, 1999, the Chief of Naval Personnel recommended that Lt. Barnes' name be removed from the promotion list. A.R. IV at 2. On April 26, 1999, that recommendation was approved by the Secretary of the Navy. *Id.* By statute, the removal of his name from the promotion list was deemed a nonselection for promotion; therefore, his subsequent failure to be selected for promotion in 2001 was considered his second nonselection which, also by statute, resulted in his involuntary discharge from the Navy on March 1, 2001. 10 U.S.C. §§ 629(c)(2), 632(a). Pl.'s Cross–Motion, App. at 4.[1] ("Your second failure of selection at the Fiscal Year 2001 Active Duty Line Lieutenant Commander Selection Board dictates you be separated from active duty no later than 1 March 2001.")

The Board for Correction of Naval Records ("BCNR") twice considered plaintiff's requests for relief. On May 16, 2000, prior to his involuntary termination, Lt. Barnes submitted an Application for Correction of Naval Records. Supplemental Administrative Record ("S.A.R."), Tabs 1 & 2. The Application asserted that because the Navy failed to follow its procedures in delaying his promotion prior to the removal of his name from the promotion list, he was promoted as a matter of law under 10 U.S.C. § 624(a)(2) which provides that "[e]xcept as provided in subsection (d), officers on a promotion list for a competitive category *shall* be promoted to the next higher grade when additional officers in that grade and competitive category are needed." (emphasis supplied). While a delay of promotion extends the period prior to appointment, Lt. Barnes' promotion was delayed. He asserts the delay was in contravention of procedural regulations.

At plaintiff's request, on May 17, 2000, the court stayed this litigation pending the Board's decision. On January 11, 2001, the Board denied the Application. S.A.R., Tab 6. On November 26, 2001, the Assistant General Counsel (Manpower and Reserve Affairs) requested the Board reconsider. Second S.A.R. at 4. On December 4, 2001, the court continued its stay pending the Board's reconsideration. On December 19, 2001, the Board again denied relief, including Lt. Barnes' request for removal of any failure of selection to lieutenant commander from his record, and cancellation of his March 1, 2001 discharge from the Navy. *Id.* at 2–3.

Plaintiff asserts the removal of his name from the promotion list did not comport with statutory and regulatory constraints, therefore he was not twice nonselected for promotion by valid proceedings and his termination from the Navy was improper. He seeks reinstatement and backpay. Plaintiff also requested that his promotion be recognized as a matter of law. The court previously entered a liability determination on the administrative record, in Lt. Barnes' favor, finding he was promoted as a matter of law. *Barnes v. United States,* 57 Fed.Cl. 204 (2003). Thereafter, proceedings concerned the appropriate amount and nature of relief. Following the Federal Circuit's decision in *Dysart v. United States,* 369 F.3d 1303 (Fed. Cir.2004), and ensuing supplemental briefing and oral argument, the court must revisit its decision in *Barnes* and now address plaintiff's alternative arguments.

### Promotion as a matter of law

Pursuant to 10 U.S.C. § 624(a)(2), officers on a promotion list "shall be promoted to the next higher grade" upon vacancy, except under certain enumerated instances in which case appointment may be delayed. Following Presidential nomination and Senate confirmation, Lt. Barnes' promotion was delayed. Finding several procedural, regulatory and statutory infirmities with the delay, the court construed "shall be promoted" as a statutory mandate that caused plaintiff's promotion. 57 Fed.Cl. at 219. *See*

---

1. Although not numbered, the August 8, 2000 letter to Barnes informing him he was involuntarily terminated from the Navy because his fail-

ure of selection by the Fiscal Year 2001 Selection Board was his "second failure," is the fourth page of the Appendix.

*Law v. United States,* 11 F.3d 1061, 1065 (Fed.Cir.1993) (noting that Law was not asking the court to order his promotion, but to recognize that it had occurred; that precedent holding the court had no authority to grant the promotion was inapplicable; and that the Court of Federal Claims had jurisdiction to grant the relief requested); *Voge v. United States,* 844 F.2d 776, 782 (Fed.Cir. 1988) ("[A]bsent a statute or regulation entitling a service member to a promotion as a matter of law, the Claims Court has no authority to entertain" a claim for promotion.).

Subsequently, *Dysart v. United States,* in which plaintiff appeared as one of four *amici curiae,* held that despite statutory promotion direction, "[t]he President's decision not to appoint is a discretionary act that cannot be reviewed by a court." 369 F.3d at 1317 (citing *Marbury v. Madison,* 5 U.S. (1 Cranch) 137, 165–67, 2 L.Ed. 60 (1803)). Article II, Section 2, Clause 2 of "the Constitution provides that the President has the authority to nominate and, 'by and with the Advice and Consent of the Senate,' to appoint 'Officers of the United States.'" "The President's decision here whether or not to exercise his appointment power is discretionary, and we hold that the President cannot be compelled to appoint military officers." 369 F.3d at 1306, 1317. Accordingly, Lt. Barnes reluctantly concedes the first three causes of action of his First Amended and Supplemental Complaint [2] for promotion by operation of law, are due to be dismissed based on *Dysart.* The "promotion" conclusion previously reached in *Barnes,* 57 Fed.Cl. at 219, cannot stand. Lt. Barnes' claims contesting his dismissal from the Navy, as based on deemed nonselection caused by a procedurally deficient removal of his name from the promotion list, remain for resolution.

[2]. The First Cause of Action asserts he was promoted to lieutenant commander·by operation of law when he was not notified of the delay of his promotion prior to its effective date, in violation of *10 U.S.C. § 624(d)(3)* and SECNAVINST (Secretary of Navy Instructions) 1420.1A ¶ 23c. The Second Cause of Action asserts that the delay of his promotion expired on May 27, 1998, when all administrative and disciplinary actions related to his nonjudicial punishment were completed; accordingly, he was promoted as a matter of law on that date. The Third Cause of Action asserts that he was not provided notice of new grounds for delay of his promotion as required under 10

*By statute, removal of Barnes' name from the promotion list, unless corrected, becomes a "failure of selection" when he was not selected for promotion by the next Selection Board, resulting in two "failed" selections and mandating his involuntarily termination.*

If an officer whose name has been "removed" from the promotion list is not recommended for promotion by the next selection board, that officer "shall be considered for all purposes to have twice failed of **selection** for promotion." 10 U.S.C. § 629(c)(2) (emphasis supplied).[3] Because his name was removed from the promotion list, and he was not recommended for promotion by the next promotion board, the Navy proceeded on the basis that plaintiff was considered twice failed of selection. However, as a matter of fact, Lt. Barnes was **selected** for promotion by the 1998 Board, and the selection received Senate confirmation. Only if Lt. Barnes' name was then properly removed from the promotion list, can the subsequent promotion board's failure to select him for promotion be deemed a "second" nonselection. *Id.* It would turn the statute on its head if the solution Congress prescribed for undue delay, *i.e.* "promotion," cannot be implemented, as ruled in *Dysart,* but, instead, a procedurally defective name removal could still be utilized, not to promote, but to dismiss an officer.

*While substantive discretionary determinations are incapable of review, Barnes' involuntary release may be reviewed for procedural compliance with Navy regulations.*

The government argues the Navy's substantive decision to remove Lt. Barnes from

U.S.C. § 624(d)(3); accordingly, he was promoted as a matter of law.

[3]. 10 U.S.C. § 629(c)(2) provides in relevant part:

If such an officer who is in a grade below ... [Navy] captain is not recommended for promotion by the next selection board convened for his grade and competitive category, or if his name is again removed from the list of officers recommended for promotion, or if the Senate again does not give its advice and consent to his promotion, he shall be considered for all purposes to have twice failed of selection for promotion.

the approved and confirmed promotion list, as well as any procedural deficiencies attendant that decision, are not justiciable.

There is a plethora of authority mandating judicial deference to military decisions. *North Dakota v. United States*, 495 U.S. 423, 443, 110 S.Ct. 1986, 109 L.Ed.2d 420 (1990) ("When the Court is confronted with questions relating to ... military operations, we properly defer to the judgment of those who must lead our Armed Forces in battle."); *Gilligan v. Morgan*, 413 U.S. 1, 10, 93 S.Ct. 2440, 37 L.Ed.2d 407 (1973) ("[D]ecisions as to the composition, training, equipping, and control of a military force are essentially professional military judgments."); *Orloff v. Willoughby*, 345 U.S. 83, 93, 73 S.Ct. 534, 97 L.Ed. 842 (1953) ("[J]udges are not given the task of running the Army."); *Voge v. United States*, 844 F.2d 776, 779 (Fed.Cir.1988) ("Judicial deference must be 'at its apogee' in matters pertaining to the military and national defense.").

■ Specifically, the merits of promotion decisions are nonjusticiable. *Haselrig v. United States*, 333 F.3d 1354, 1355, 1357 n. 3 (Fed.Cir.2003) (reviewing Air Force promotion board's procedures and concluding they "reflect a permissible construction of [the statute]," but noting that "the merits of such a decision [not to promote] are not subject to judicial review."); *Richey v. United States*, 322 F.3d 1317, 1328 (Fed.Cir.2003) ("No court is in a position to resolve and pass upon the highly complicated questions and problems involved in the promotion procedure."); *Fluellen v. United States*, 225 F.3d 1298, 1304 (Fed.Cir.2000) (finding complaints about an Air Force Correction Board review of prospects for promotion to be nonjusticiable). Leadership issues are matters for the military, not the judiciary. As the Federal Circuit observed in *Porter v. United States:*

> The promotion of an officer in the military service is a highly specialized function involving military requirements of the service and the qualifications of the officer in comparison with his contemporaries, plus expertise and judgment possessed only by the military. No court is in a position to resolve and pass upon the highly complicated questions and problems involved in

the promotion procedure, which includes, but is not limited to, an analysis of the fitness reports and personnel files and qualifications of all the officers considered.

163 F.3d 1304, 1316–17 (Fed.Cir.1998) (*quoting Brenner v. United States*, 202 Ct.Cl. 678, 692, 693–94, 1973 WL 21354 (1973)).

On the other hand, military decisions that do not comport with statutory, regulatory or procedural strictures, including those concerning promotions, are reviewable. "Though the question of fitness to serve may be nonjusticiable in various contexts, we have consistently noted that a challenge to a particular procedure followed by the military in rendering a decision may present a justiciable issue." *Fisher v. United States*, 402 F.3d 1167, 1177 (Fed.Cir.2005). *See Wagner v. United States*, 365 F.3d 1358, 1361 (Fed.Cir.2004) (citing *Service v. Dulles*, 354 U.S. 363, 388, 77 S.Ct. 1152, 1 L.Ed.2d 1403(1957)); *Carmichael v. United States*, 298 F.3d 1367, 1373–74 (Fed.Cir.2002) and *Voge*, 844 F.2d at 779 (" 'It has long been established that government officials must follow their own regulations, even if they were not compelled to have them at all.' "). *See also Dysart*, 369 F.3d at 1315 (stating that "[i]n general, the subject of military promotions is beyond the competence of courts to review," but "redress may be afforded for a promotion improperly denied"). "Not every claim arising from a military decision presents a nonjusticiable controversy." *Adkins v. United States*, 68 F.3d 1317, 1323 (Fed.Cir.1995) ("[A]lthough the *merits* of a decision committed wholly to the discretion of the military are not subject to judicial review, a challenge to the particular *procedure* followed in rendering a military decision may present a justiciable controversy.") (emphasis in original). *Groves v. United States*, 47 F.3d 1140, 1144 (Fed.Cir.1995) ("[N]o court is qualified to review the substantive merits of a decision [committed to the discretion of the military], so long as the decision comports with any procedural standards mandated by statute or regulation."); *Lindsay v. United States*, 295 F.3d 1252, 1257–58 (Fed.Cir.2002) (reversing the dismissal of a service member's claim that his involuntary separation was due to an evalua-

tion that did not follow Air Force procedures, noting that "[a] claim of procedural violations may present a justiciable controversy because 'the test or standards against which this court measures the military's action are inherent: they are the applicable statutes and regulations'") (quoting *Adkins,* 68 F.3d at 1323). "A court may appropriately decide whether the military followed procedures because by their nature the procedures limit the military's discretion." *Murphy v. United States,* 993 F.2d 871, 873 (Fed.Cir.1993). "[O]nce the Secretary promulgated regulations and instructions and made them the basis [for the officer's involuntary release], his action became subject to judicial review for compliance with those regulations and instructions, even though he was not required to issue them at all." *Sargisson v. United States,* 913 F.2d 918, 921 (Fed.Cir.1990). *See also Roth v. United States,* 378 F.3d 1371, 1385 (Fed.Cir.2004); *Godwin v. United States,* 338 F.3d 1374, 1378 (Fed.Cir.2003); *Kreis v. Sec'y of Air Force,* 406 F.3d 684, 686 (D.C.Cir.2005); *Rolader v. United States,* 42 Fed.Cl. 782 (1999).

The consequences of procedural violations may include setting aside an involuntary discharge and ordering reinstatement. In *Porter v. United States,* 163 F.3d 1304 (Fed.Cir. 1998), the officer complained about substantive evaluation data provided to the promotion selection board. The Federal Circuit sanctioned a remand to a Special Selection Board to determine whether the promotion decision would have been different with a corrected evaluation. Like Barnes, Porter sought to invalidate at least one of the passovers which led to his termination, a consequence recognized by the Federal Circuit. "[The voiding of previous passovers] would have removed the legal basis for Porter's 1985 discharge, resulting in a constructive if not actual reinstatement to his pre-discharge rank of first lieutenant and entitlement to back pay and related benefits." 163 F.3d at 1305. Thus, procedural infirmities in the removal of Lt. Barnes from the promotion list could void his imputed nonselection and consequent involuntary release.

The court's threshold decision of justiciability is also guided by the Federal Circuit's recent analysis in *Wagner v. United States,* 365 F.3d 1358 (Fed.Cir.2004). There, unlike many of the passover or termination cases which contested the merits of a military decision, the Federal Circuit found procedural error in the commencement of separation proceedings. Army Regulation ("AR") 600–8–24 required the Secretary of the Army approve the commencement of separation proceedings if the service member had eighteen or more years of service as of the date of the proposed release. When the proceedings began, Wagner had not reached that threshold, but with subsequent update of his records, he did. Separation proceedings continued however, without knowledge of this update and Wagner was subsequently involuntarily released. The Army then became aware that with his updated records, he had tenure. The Secretary then gave his retroactive approval. Wagner sought relief, including reinstatement, from the Army Board for Correction of Military Records. Relief was denied, the Board concluding that any error was harmless. In reversing, the Federal Circuit differentiated between cases where procedural defects are reviewed for harmless error and those where error is presumed. "Where reviewable standards or factors constrain the exercise of discretion, harmless error continues to be the appropriate test. Where the effect of an error on the outcome of a proceeding is unquantifiable, however, we will not speculate as to what the outcome might have been had the error not occurred." 365 F.3d at 1365 (citations omitted). "[S]trict compliance with procedural requirements is not required where the error is deemed harmless." 365 F.3d at 1361, citing *Gratehouse v. United States,* 206 Ct.Cl. 288, 512 F.2d 1104, 1108 (1975) ("Exceptions are made to the rule of *Service v. Dulles* where the procedural error is deemed harmless."); *Carmichael v. United States,* 298 F.3d 1367, 1375–76 (remanding for a determination whether the Navy would have discharged the soldier even if it had followed proper procedures); and *Sargisson v. United States,* 913 F.2d 918, 922–23 (Fed.Cir.1990) (finding harmless error in a procedural violation where there was no risk of prejudice).

In sum, substantive errors are reviewable for harmless error, that is whether " 'substantial evidence showed that it was unlikely that the officer would have been promoted in any event.' " 365 F.3d at 1362 (citing *Sanders v. United States*, 219 Ct.Cl. 285, 594 F.2d 804, 818 (1979)) and discussing *Engels v. United States*, 230 Ct.Cl. 465, 678 F.2d 173 (1982).[4]

In contrast to deficiencies in a service member's record, harmless error does not apply to "structural defects in the constitution of the trial mechanism, which defy analysis by harmless-error standards. . . . [They are] not quantifiable and [are] therefore incapable of review." 365 F.3d at 1364 (internal quotation marks omitted). Included in that category are "procedural errors regarding the composition of military selection boards." *Wagner*, 365 F.3d at 1362, citing *Doyle v. United States*, 220 Ct.Cl. 285, 599 F.2d 984 (1979) (review board did not contain statutorily required number of Reserve officers; review for harmless error did not apply; reinstatement and back pay ordered), *Evensen v. United States*, 228 Ct.Cl. 207, 654 F.2d 68, 72 (1981) (reinstatement and back pay ordered without harmless error review where, in violation of statutory proscription, review board included members who had served on a prior board that had not selected the plaintiff for promotion), and *Porter v. United States*, 163 F.3d at 1317. The *Wagner* court concluded that the "nature of the procedural error involved required our conclusion that harmless error review is inappropriate in this case, as the magnitude of the effect of the error on the proceeding defies assessment by a reviewing body." 365 F.3d at 1364.

The determination that the harmless error screen did not apply to the failure to get preapproval of separation proceedings in *Wagner* applies with equal force to Lt. Barnes' allegations of improper delays in his promotion, the subsequent removal of his name from the promotion list and consequent imputed nonselection and involuntary termination from the Navy.

The court's analytical construct here is also consistent with *Finkelstein v. United States*, 29 Fed.Cl. 611 (1993), where plaintiff was involuntarily separated from the United States Army following two promotion board passovers. The first promotion board was convened before Finkelstein had served a full year of continuous active duty, but less than one year since her placement on the active duty list. Therefore, her consideration for promotion was not within the temporal windows set by Army regulations. Also, both promotion boards were convened before she had completed the required three years of service in that grade. The validity of the discharge depended on the validity of the passovers.

> The principal issue addressed in this opinion is whether plaintiff's 'constructive service' meets the time in service requirements of [the AR and statute]. If it does not meet [those requirements], her first failure of selection was invalid. If it does not meet the actual service in grade requirement of [the statute], both passovers were invalid. In either event, whether based on two illegal passovers or only one, her discharge would be invalid.

29 Fed.Cl. at 616 (footnote omitted). The court concluded that the selection boards nonselected her for promotion before the required time in duty periods had elapsed; accordingly, the ABCMR's refusal to remove the unauthorized passovers and reinstate her in the Army was erroneous. Reinstatement was ordered. 29 Fed.Cl. at 625.

At oral argument in this case, the government asserted that the procedures at issue here were not "regulations" because they were not promulgated under the Administrative Procedures Act, with notice and opportunity for comment. While regulatory procedural restraints on the Navy's decisions may

---

**4.** *Wagner* noted that harmless error analysis required in *Sanders* was eliminated in *Porter v. United States*, 163 F.3d 1304, 1324 (Fed.Cir. 1998). *Wagner*, 365 F.3d at 1365 n. 2. Citing the 1980 enactment of the Defense Officer Personnel Management Act ("DOPMA") under which an officer not selected for promotion may appear

before a Special Selection Board, *Porter* "dispense[d] with the old and mooted harmless error inquiry." *Porter*, 163 F.3d at 1325. Substantive record errors are remanded to a Special Selection Board for consideration without voiding prior passovers.

be subject to judicial scrutiny, the procedural glitches in the removal of plaintiff's name from the promotion list here, were embodied in a personnel regulation. Accordingly, the government argues, no substantive rights were created. *Hamlet v. United States,* 63 F.3d 1097 (Fed.Cir.1995), cited by the government for this position, concluded that a personnel manual could confer enforceable rights pursuant to 28 U.S.C. § 1491(a), except that the provision there contravened a federal statute.[5] 63 F.3d at 1106. Here, the Navy regulation does not. And, recently, *Wagner* clearly rejected the government's proffered defense. "[F]undamental errors are not limited to statutory procedural error, but may also result from violations of regulations and even internal operating procedures." *Wagner,* 365 F.3d at 1363.[6] Indeed, it was noncompliance with a internal regulation that led to the Federal Circuit's conclusion Wagner "was not legally released from active duty due to the Army's failure to adhere to its involuntary separation procedures as set out in AR 600–8–24." 365 F.3d at 1365.

***The Navy did not comply with its procedures when it removed Barnes' name from the promotion list; accordingly, the removal was not a "nonselection" for promotion.***

■ In his Fourth Cause of Action of his First Amended and Supplemental Complaint, plaintiff asserts his "release from active duty in 2001 was unlawful because it was the result of the unlawful purported removal of his name from the active duty lieutenant commander promotion list." While a presidential refusal to appoint is not reviewable under *Dysart,* and thus relief based upon an

office not attained is precluded, deficient removal from the promotion list is a different matter. As plaintiff argues, "[t]he fact that that [sic] an officer whose promotion is derailed by a refusal to appoint cannot compel appointment does not ineluctably lead to the conclusion that the courts are powerless to examine the legality of the process leading up to that refusal—here the purported removal from a promotion list." Pl.'s Supplemental Br. at 3. Because his name was not properly removed from the promotion list, the resulting lack of two valid promotion passovers is the basis for plaintiff's assertion that he is "deemed to have remained on active duty until such time as he retires or is otherwise lawfully removed from active duty." *Id.* at 3.

Officers on a promotion list "shall be promoted to the next higher grade when additional officers in that grade and competitive category are needed." 10 U.S.C. § 624(a)(2). Appointment may be delayed under certain specified circumstances, but no more than eighteen months from the initial anticipated appointment date given.

An appointment of an officer may not be delayed under this subsection for more than six months after the date on which the officer would otherwise have been appointed unless the Secretary concerned specifies a further period of delay. An officer's appointment may not be delayed more than 90 days after final action has been taken in any criminal case against such officer in a Federal or State court, more than 90 days after final action has been taken in any court-martial case against such officer, or more than 18

**5.** The *Hamlet* panel recognized that "several courts have held that an agency manual or handbook can be a binding agency regulation." 63 F.3d at 1103–04 (citing *Service v. Dulles,* 354 U.S. 363, 77 S.Ct. 1152, 1 L.Ed.2d 1403 (1957); *Vitarelli v. Seaton,* 359 U.S. 535, 538–40, 79 S.Ct. 968, 3 L.Ed.2d 1012 (1959); and *Thorpe v. Housing Authority of Durham,* 393 U.S. 268, 274–76, 89 S.Ct. 518, 21 L.Ed.2d 474 (1969)).

**6.** Defendant's citation to *Abruzzo v. United States,* 206 Ct.Cl. 731, 513 F.2d 608 (1975), is also inapposite. In *Abruzzo,* the plaintiff alleged that the Marine Corps' failure to process a requested transfer to the Air Force voided his involuntary release from active duty after he was twice non-

selected for promotion. Plaintiff argued that he had a right to remain on active duty until that request was properly processed. The Court of Claims adopted the conclusion of the trial court that any defects in the handling of his transfer request did not insulate him from release from active duty. "Plaintiff incorrectly equates his undoubted right to request an interservice transfer to an obligation by the Marine Corps to retain him on active duty until that request has been finally approved or disapproved. In fact, no such obligation exists. Plaintiff's tour of duty was not in any way related, or otherwise contingent on, the proper processing of the transfer request." 513 F.2d at 611.

months after the date on which such officer would otherwise have been appointed, whichever is later.

10 U.S.C. § 624(d)(4).

The President has delegated his right to remove a service member from the promotion list to the Secretary of Defense.

The President has the authority to "remove the name of any officer from a list of officers recommended for promotion." 10 U.S.C. § 629(a). He has delegated this authority to the Secretary of Defense, but only for grades below rear admiral (lower half) (in the Navy) and brigadier general (in the Army, Air Force, and Marine Corps). *See* Exec. Order No. 12,396, § 1(b).

*Dysart*, 369 F.3d at 1309 n. 5.

Under the Navy's regulations, a name may be removed from a promotion list by appropriate request to the Secretary of the Navy only during a delay of that promotion:

e. **Removal from the Promotion List.** If during a delay of promotion, it is determined that removal from the promotion list is appropriate, removal action under paragraph 17a may be initiated. Although removal action is contemplated, requests for delay extensions as provided in paragraph 23d shall be submitted to SECNAV as necessary until the officer's name is removed from the promotion list.

SECNAVINST 1420.1A, ¶ 23e.

Those authorized to remove are set forth in Paragraph 17a:

SECNAV may remove the name of any officer from a promotion list to any grade below 0–7. CHNAVPERS or CMC, as appropriate, may submit requests for such action to SECNAV. In the case of officers on a promotion list for the grades 0–7 and above, CHNAVPERS or CMC, as appropriate, shall provide a request for removal action to the President via SECDEF to SECNAV for signature.

Accordingly, removal from an approved promotion list must be during a period of delay. Promotion delays are subject to statutory and regulatory constraints. A promotion may be delayed if: (1) sworn court-martial charges have been received; (2) a disciplinary investigation is being conducted; (3) a board of officers has been convened; (4) state or federal criminal charges are pending; or (5) "[u]nder regulations prescribed by the Secretary concerned, the appointment of an officer under this section may also be delayed in any case in which there is cause to believe that the officer is mentally, physically, morally, or professionally unqualified to perform the duties of the grade for which he was selected for promotion." 10 U.S.C. § 624(d)(1) and 624(d)(2).

As delineated in *Barnes v. United States*, 57 Fed.Cl. 204 (2003), at the time Lt. Barnes' name was removed from the promotion list, there were no statutory or regulatory grounds for delay—(1) there were no outstanding court-martial charges; (2) there was no criminal investigation; (3) no board of officers had convened; and (4) there were no pending criminal charges. Also there had been no finding of cause to believe he was mentally, physically, morally, or professionally unqualified to perform the duties of a lieutenant commander under regulations adopted by the Navy. Even if any of the foregoing grounds could have supported the March 17, 1998 delay memorandum, it expired by its own terms—"until all related administrative or disciplinary action is completed." A.R. IV at 39. All administrative and disciplinary proceedings against Lt. Barnes were completed on May 27, 1998. When Barnes was notified on September 8, 1998 that his name might be removed from the promotion list, and on April 26, 1999 when Secretary of the Navy Richard Danzig approved the Chief of Naval Personnel's recommendation to remove his name from the list, any delay period had expired.

Furthermore, there was no valid basis for an extension of the period of delay after March 17, 1998, and the extension sought did not accord with procedural strictures. *Barnes*, 57 Fed.Cl. at 215–17. Accordingly, his removal was not "during a delay" as required by Navy procedures. There being no proper delay, the removal of Barnes' name from the promotion list on April 26, 1999 did not comport with the Navy's self-imposed limitations. SECNAVINST 1420.1A, ¶ 23e.

Plaintiff was not appointed to a position at the higher rank, and, referencing SECNA-VINST 1420.1A, his name was removed from the promotion list on April 26, 1999 by Richard Danzig, Secretary of the Navy. A.R. IV at 2. After his name was removed from the 1998 promotion list, the 2001 Selection Board failed to select plaintiff for promotion. The defective removal of plaintiff's name from the 1998 promotion list still resulted in the Navy taking action on the basis that it was deemed a failure of selection, so that his 2001 failure of selection became his second. 10 U.S.C. § 629(c)(2).[7] A second failure of selection caused plaintiff's separation from active duty. 10 U.S.C. § 632(a).

Like the procedural failure to get preapproval in *Wagner,* here action to remove Lt. Barnes' name from the list of those selected for promotion was not taken during an appropriate period of delay. In Lt. Barnes' situation, there is nothing to re-review. "The nature of the procedural error involved requires our conclusion that harmless error review is inappropriate in this case, as the magnitude of the effect of the error on the proceeding defies assessment by a reviewing body." *Wagner,* 365 F.3d at 1364. The bell has already been wrung. As set forth in the prior opinion in this matter, 57 Fed.Cl. 204, the Navy did not follow its procedures. Procedural defects in extending the delay that must exist to permit the removal of Lt. Barnes from the promotion list, like the procedural defects in *Wagner,* were systemic to Barnes' involuntary release.

The government argues any error was harmless. Plaintiff was afforded the right to comment on the removal of his name from the promotion list the government notes,

thus removing possible harm. Again, *Wagner's* discussion of when harmless error is inapplicable mandates rejection of this analysis. Moreover, prejudicial consequence is self-evident. The procedurally deficient name removal resulted in Lt. Barnes' involuntary termination from the Navy.

Failure to comply with Navy regulations concerning name removal from promotion lists served to deprive the removal of its validity, and thus prevents the removal from serving as a **failure** of selection, when in fact, Lt. Barnes had actually been **selected** for promotion.[8] Absent a valid "first" deemed nonselection, there was no "second" failure of selection and the requirements of 10 U.S.C. § 632(a) have not been satisfied.

### The constructive service doctrine applies.

The Military Pay Act is money-mandating. *Smith v. Sec'y of Army,* 384 F.3d 1288, 1294 (Fed.Cir.2004) (citing *Dysart,* 369 F.3d at 1315). Under the Military Pay Act, "a member of a uniformed service who is on active duty" is "entitled to the basic pay of the pay grade to which assigned." 37 U.S.C. § 204(a).

An officer's right to pay "continues until the officer is properly separated from the service." *Smith,* 384 F.3d at 1295 (citing *Sanders v. United States,* 219 Ct.Cl. 285, 594 F.2d 804, 810 (1979)). *See also Van Cleave v. United States,* 402 F.3d 1341, 1343 (Fed.Cir. 2005); *Martinez v. United States,* 333 F.3d 1295, 1303 (Fed.Cir.2003) (*en banc*) ("[B]ecause of the unlawful discharge, the plaintiff is entitled to money in the form of the pay that the plaintiff would have received but for the unlawful discharge."); *Tippett v. United States,* 185 F.3d 1250, 1255 (1999) (If a ser-

---

7. 10 U.S.C. § 629(c)(2) provides:
    If such an officer (who is removed from a promotion list) who is in a grade below the grade of colonel or, in the case of the Navy, captain is not recommended for promotion by the next selection board convened for his grade and competitive category, or if his name is again removed from the list of officers recommended for promotion, or if the Senate again does not give its advice and consent to his promotion, he shall be considered for all purposes to have twice failed of selection for promotion.

8. This result is consistent with the intent of Congress. The statutory remedy Congress provided

in this situation is automatic promotion/appointment to a position at the higher rank, not the conversion of an actual selection into a deemed passover. 10 U.S.C. § 624(a)(2). For constitutional reasons, the intended statutory remedy is thwarted. *Dysart,* 369 F.3d at 1317 (citing *Marbury v. Madison,* 5 U.S. (1 Cranch) 137, 165–67 (1803)). However, to sanction the consequence the government seeks here of a procedurally defective name removal converting an actual promotion selection and confirmation into a deemed passover, would be antithetical to the intent of Congress.

vice member's "discharge was involuntary and improper, his statutory right to pay was not extinguished and thus serves as a basis for Tucker Act jurisdiction."); *Holley v. United States*, 124 F.3d 1462, 1465 (Fed.Cir. 1997) ("It is well established that 37 U.S.C. § 204 serves as the money-mandating statute applicable to military personnel claiming damages and ancillary relief for wrongful discharge."). Constructive service, a predicate for back pay, applies if a discharge or separation is voided. *Adkins v. United States*, 68 F.3d 1317, 1326–27 (Fed.Cir.1995). Members of the military " 'who have been illegally or improperly separated from service are deemed to have continued in active service until their legal separation .... They are, therefore, entitled to back pay and benefits for the intervening period, *i.e.*, retroactive to their original separation from service.' " *Anderson v. United States*, 59 Fed. Cl. 451, 457–58 (2004) (quoting *Christian v. United States*, 337 F.3d 1338, 1347 (Fed.Cir. 2003)). Accordingly, Barnes is entitled to reinstatement and backpay.

The procedural infirmities in the delay of Lt. Barnes' promotion, which resulted in his deemed nonselection and consequent involuntary discharge, fit neatly within the circumstances described in *Smith v. Secretary of the Army*.

> [A]n action for money arises under the Military Pay Act when the decision not to promote the service member leads to the service member's compelled discharge. If, in such a case, the effect of an order voiding the nonpromotion decision would be to give the service member a right to continue in the service at his previous rank, he would have a claim for the pay lost because of his improper separation. In that instance, the Military Pay Act would give the service member a right to back pay, because the Act 'confers on an

officer the right to pay of the rank he was appointed to up until he is properly separated from the service.'

384 F.3d at 1295 (citations omitted). The procedural infirmities in the delay of Barnes' otherwise valid selection for promotion, prefatory to his compelled discharge, have the same result.

### Lt. Barnes did not waive or relinquish his request for reinstatement.

Post-*Dysart* oral argument injected two new elements into this litigation. First, Lt. Barnes stated that he was ready, willing, and able to return to active duty, thus resolving a previous question in this regard.[9] Secondly, the government argued that Barnes recently resigned his commission, and accordingly, his appointment was lost. His resignation was for all purposes and waived the claims he seeks to assert here.

Following his involuntary termination, Lt. Barnes accepted a commission in the Independent Ready Reserves ("IRR") and received approximately $72,000 in separation pay. Def.App. filed January 7, 2005 at B4. Shortly after June 30, 2003, the date of the decision in his favor in *Barnes v. United States*, (and apparently in response to a request from the IRR for updated information for mobilization purposes), on July 15, 2003, plaintiff wrote to the Naval Reserve Personnel Center: "[p]lease accept this as my resignation from the IRR, thus ending my obligation to the U.S. Navy." Defendant's Motion Seeking Leave to Supplement the Record, Attach. B8. Accepting his resignation, the Navy's July 29, 2003 response referred to his discharge from the U.S. Naval Reserve. *Id.* at B9. By its terms, the resignation was only from the Reserves, the only military component of which he was an officer. Lt. Barnes' resignation from the Reserves did not waive the claims he seeks to assert here. *Van*

---

9.
> MR. FIDELL: Mr. Barnes is ready, willing and able to be restored to active duty at such time as the Navy issues him orders.... He's ready, willing and able. If they issue him a set of orders as a lieutenant, here we are. Or a lieutenant commander.
> Hearing Tr. 12–13.
> Previously, plaintiff's willingness to return to active duty was questionable. *See* Order of Sep-

tember 12, 2003. His previously stated position concerning restoration to office may have effectively mooted possible relief. However, if not correctly removed from active duty, Lt. Barnes may not be able to avoid reinstatement absent a resignation accepted by the Navy as of an agreed date. *Anderson v. United States*, 59 Fed.Cl. 451, 454 n. 7, 457–58 (2004).

*Cleave v. United States,* 402 F.3d 1341 (Fed. Cir.2005).

The cases cited by defendant in this regard are distinguishable. In *Mimmack v. United States,* 97 U.S. 426, 14 Ct.Cl. 578, 24 L.Ed. 1067 (1878) and *Miller v. United States,* 19 Ct.Cl. 338 (1884), the President's attempts to rescind acceptance of officers' voluntary resignations were rebuffed. Lt. Barnes did not resign from active duty. *Parrish v. Brownlee,* 335 F.Supp.2d 661 (E.D.N.C.2004) a recent stop loss case, also does not translate to this situation. In *Parrish,* the court found "[u]nder statutes and regulations governing the status of commissioned officers, plaintiff, as an officer in the IRR who did not resign his commission upon completion of his MSO [Military Service Obligation], remained under the jurisdiction of the Army and subject to call to active duty." 335 F.Supp.2d at 669. The ability of the Navy to recall Lt. Barnes is not an issue in this case.

### Appropriate relief

For the purposes of the remedy, the situation involved in this case is not akin to those involved in *Roth v. United States,* 378 F.3d 1371 (Fed.Cir.2004), *Richey v. United States,* 322 F.3d 1317 (Fed.Cir.2003), and *Porter v. United States,* 163 F.3d 1304 (Fed.Cir.1998). In those cases, pursuant to 10 U.S.C. § 628, prior to its amendment in 2001, 107 Pub.L. No. 107, § 503(b), 115 Stat. 1012, 1084 (2001), asserted defects in promotion selection board actions were held to require reconsideration by Special Selection Boards ("SSB"), as opposed to a court order voiding the selection board actions and reinstating the officers. In each of these cases the officers had twice been passed over for promotion, were discharged as a result, and then filed suit raising asserted defects in the selection board proceedings involved.

In the instant case, the defect involved does not concern the initial Selection Board action. There is no dispute that the Board

selected Lt. Barnes for promotion to lieutenant commander. This selection was approved by the Secretary of Defense, the nomination was forwarded to the Senate and there confirmed. As detailed previously, in violation of Navy regulation, Lt. Barnes' name was then removed from the promotion list. There exists no basis upon which an SSB could reconsider the previous selection board action when no defect in the Board's action is involved. The defect in Lt. Barnes' case resides elsewhere. Absent the relevance of the pre–2001 procedure prescribed by 10 U.S.C. § 628, and absent the presence of harmless error, as discussed previously, reinstatement is required. This is because the invalid removal of Lt. Barnes' name from the promotion list precluded 10 U.S.C. § 629(c)(2) from operating to convert his initial selection for promotion to lieutenant commander, as confirmed by the Senate, into a passover. Lt. Barnes was thus improperly discharged from the Navy on March 1, 2001 on the basis of only one nonselection instead of the two nonselections required. 10 U.S.C. § 632(a). In this circumstance, Lt. Barnes has not been effectively discharged and is entitled to reinstatement and back-pay in his current rank.[10]

The Military Pay Act, 37 U.S.C. § 204 entitles Barnes to "money in the form of the pay that the plaintiff would have received but for the unlawful discharge." *Martinez v. United States,* 333 F.3d 1295, 1303 (Fed.Cir. 2003) (*en banc*). *See also Holley v. United States,* 124 F.3d 1462, 1465 (Fed.Cir.1997) (holding the Military Pay Act "serves as the money-mandating statute applicable to military personnel claiming damages *and ancillary relief* for wrongful discharge") (emphasis supplied). Also, this court "may, as an incident of and collateral to any ... judgment, issue orders directing restoration to office or position, placement in appropriate duty or retirement status, *and correction of applicable records,* and such orders may be

---

**10.** Final judgment in this matter will provide that following Lt. Barnes' reinstatement, the Secretary shall convene an SSB, pursuant to 10 U.S.C. § 628, to reconsider Lt. Barnes' 2001 failure of selection. This step will be required in

that the 2001 Selection Board had before it Lt. Barnes' record showing his previous name removal from the earlier promotion list, which record correction action to be ordered as part of the final judgment in this matter will eliminate.

issued to any appropriate official of the United States." 28 U.S.C. § 1491(a)(2) (emphasis added).

## CONCLUSION

Based upon the foregoing, it is OR-DERED:

(1) That the conclusion that Lt. Barnes was promoted set forth in the Opinion, reported at 57 Fed.Cl. 204 (2003), shall be VACATED;

(2) Plaintiff's discharge from the Navy on March 1, 2001 is invalid such that Lt. Barnes shall be reinstated in the Navy at his current rank with a judgment to be entered for appropriate back pay less the adjustments required, such as his civilian earnings for the period involved;

(3) Final judgment, when entered in this matter, shall also provide for appropriate correction of Lt. Barnes' record to eliminate references to the removal of his name from the 1998 promotion list in connection with appropriate reconsideration of his promotion by an SSB for 2001; and

(4) Counsel shall now confer to reach agreement on the appropriate amount of back pay and adjustments for the entry of a final judgment in this matter, and on or before **September 6, 2005**, shall file a report in this regard setting forth the agreed amount(s), or, in the absence of an agreed amount(s), suggestions as to the further procedures required in order to determine the amount(s) involved.